NOT YET SCHEDULED FOR ORAL ARGUMENT

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) | |
| *Petitioner,* | ) ) | |
| v. | ) ) | No. 23-1177 (and consolidated cases) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL., | ) ) ) | |
| *Respondents.* | ) ) ) | |

**MOTION FOR LEAVE TO INTERVENE ON
BEHALF OF RESPONDENTS**

The above consolidated cases involve challenges to final agency action by the United States Environmental Protection Agency ("EPA") entitled "Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes," published at 88 Fed. Reg. 44,468 (July 12, 2023) (referred to herein as "RFS Set Rule"). The RFS Set Rule sets the volumes and the standards for compliance years 2023, 2024, and 2025 under the Renewable Fuel Standard program.[1] Pursuant to Federal Rules

---

[1] The final rule also included various changes to EPA's regulations, including what EPA refers to as the "Biogas Regulatory Reform Rule." *See* EPA, *RFS Set Rule Implementation Webinar*, https://www.epa.gov/renewable-fuel-standard-program/rfs-set-rule-implementation-webinar (last updated Sept. 19, 2023). Movant has also filed a petition for review, challenging the Biogas Regulatory Reform Rule.

of Appellate Procedure 15(d) and 27 and D.C. Circuit Rules 15(b) and 27, Movant Coalition for Renewable Natural Gas ("RNG Coalition") respectfully requests leave to intervene on behalf of Respondents with respect to those challenges that may implicate the cellulosic biofuel volume requirements in the final RFS Set Rule. On September 11, 2023, American Fuel & Petrochemical Manufacturers ("AFPM") filed a Petition for Review of the RFS Set Rule (Case No. 23-1247).[2] This motion is being filed within 30 days of this petition, and, thus, it is timely.

RNG Coalition represents the renewable natural gas industry, and its members, which include developers, owners and operators of renewable natural gas facilities and distributors of renewable natural gas, participate in the Renewable Fuel Standard program and generate Renewable Identification Numbers ("RINs") for compliance with the cellulosic biofuel volume requirements (also referred to as "D3 RINs").[3] Renewable natural gas, in the form of compressed natural gas ("CNG") and liquified natural gas ("LNG"), has been used to meet virtually all of the cellulosic biofuel volume requirements under the Renewable Fuel Standard program in recent

---

[2] This petition was consolidated with the previously filed petition by the Center for Biological Diversity, Case No. 23-1177, in which this motion is being filed. Other obligated party interests have similarly filed petitions for review, challenging the RFS Set Rule. *See, e.g.,* American Refining Group, Inc., et al., Non-binding Statement of the Issues to be Raised, No. 23-1243 (consolidated with No. 23-1177, Doc. # 2018547 (filed Sept. 22, 2023).

[3] Renewable natural gas from certain feedstocks can also qualify as non-cellulosic advanced biofuel for generation of "D5" RINs.

years, and is expected to meet the vast majority of the cellulosic biofuel volumes required for compliance years 2023, 2024, and 2025 under the RFS Set Rule. *See* 88 Fed. Reg. at 44,481-44,484, 44,492.

The cellulosic biofuel volume requirements in the final RFS Set Rule are based on higher estimates of renewable natural gas from CNG/LNG and liquid cellulosic biofuels than in the proposal. *See* 88 Fed. Reg. at 44,491, Although it has not yet filed its statement of issues, AFPM opposed the cellulosic biofuel volumes in the proposal, including contending that EPA was somehow barred from increasing the volumes for 2023 and 2024, and essentially opposed increasing the volumes from those proposed in the final rule. *See* Comments of AFPM, Feb. 10, 2023, at 12-13, *available at* www.regulations.gov (EPA-HQ-OAR-2021-0427-0812). RNG Coalition, on the other hand, urged EPA to increase the cellulosic biofuel volumes from the proposal in the final rule. Comments of RNG Coalition, et al., Feb. 10, 2023, at 1-11, 17-18, *available at* www.regulations.gov (EPA-HQ-OAR-2021-0427-0756).

This Court has routinely allowed biofuels producers, which EPA lists as potentially affected entities under the RFS Set Rule, 88 Fed. Reg. at 44,468, to intervene in cases involving challenges by obligated parties to the standards set by EPA under the RFS program and its implementation. RNG Coalition seeks to intervene to support EPA on issues raised by petitioners, particularly obligated party

petitioners such as AFPM, that may affect the cellulosic biofuel volume requirements.

Counsel for RNG Coalition reached out to the counsel for the parties in these consolidated cases for their position on this motion. Counsel for Petitioners Center for Biological Diversity, No. 23-1177, Neste US, Inc., No. 23-1240, American Refining Group, Inc, et al., No. 23-1243, REH Company, No. 23-1244, Clean Fuels Alliance America, No. 23-1245,[4] Sustainable Advanced Biofuel Refiners Coalition, No. 23-1246, and National Wildlife Federation, No. 23-1249, and for Respondent EPA indicated that they take no position on this motion.

A corporate disclosure statement pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1 and a certificate of parties and *amici* pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A) are also attached to this motion.

---

[4] On October 5, 2023, Clean Fuels Alliance America filed a stipulation to voluntarily dismiss their petition, Doc. # 2020671, and to move to intervene "in support of EPA on the issues raised by the obligated party petitioners and the environmental groups." Doc. # 2020672 at 3.

## I.    Interests of Intervenor.

The Renewable Fuel Standard, first established by the Energy Policy Act of 2005 and then expanded by the Energy Independence & Security Act of 2007, is codified in Section 211(o) of the Clean Air Act and requires a minimum volume of renewable fuel be sold in the United States each year. 42 U.S.C. §7545(o)(2). The purpose of the program is to promote the production of transportation fuels derived from renewable biomass, which provide numerous environmental, economic and energy security benefits.

The statute specifies annual required, minimum applicable volumes through 2022 for renewable fuel, advanced biofuel, and cellulosic biofuel. 42 U.S.C. §7545(o)(2)(B)(i)(I-III). For biomass-based diesel, the statute specifies volumes through 2012. *Id.* §7545(o)(2)(B)(i)(IV). For the years in which the applicable volumes are not specified in the statute, EPA determines the volumes in coordination with the Departments of Energy and Agriculture, based on an analysis of factors outlined in the statute. *Id.* §7545(o)(2)(B)(ii) (referred to as the "Set" provision). The RFS Set Rule is the first rule by EPA that sets the volumes for renewable fuel, advanced biofuel, and cellulosic biofuel under the "Set" provision. It set the volumes for all categories for compliance years 2023, 2024, and 2025.

In the proposed rule, EPA based the cellulosic biofuel volumes on projections of CNG/LNG production using a 13.1% growth rate. 87 Fed. Reg. 80,582, 80,593

5

(Dec. 30, 2022). This growth rate was determined by comparing D3 RIN generation for CNG/LNG from June 2020 to May 2021 with D3 RIN generation for CNG/LNG from June 2021 to May 2022.[5] *Id.* The proposal declined to include any projections of liquid cellulosic biofuels in determining the proposed volume requirements for 2023 and estimated 5 million gallons for 2024 and 10 million gallons for 2025.[6] *Id.* at 80,595. The final RFS Set Rule, however, based its cellulosic biofuel volume projections using a higher growth rate (25%) for CNG/LNG production, as more reflective of potential production, and included higher volume estimates for corn kernel fiber ethanol (7-77 million gallons). 88 Fed. Reg. at 44,482-44,483.

RNG Coalition participated in the administrative proceedings for the RFS Set Rule on behalf of its members, including urging EPA to use a higher growth rate and to account for potential additional cellulosic biofuels, including corn kernel fiber ethanol. Comments of RNG Coalition, et al., Feb. 10, 2023, at 1-11, 17-18, *available at* www.regulations.gov (EPA-HQ-OAR-2021-0427-0756). Members of RNG Coalition have made investments in response to the Renewable Fuel Standard program, which could be lost if the volume requirements are too low. *Id.* at 9-11. In

---

[5]  RINs represent an ethanol-equivalent gallon of renewable fuel and are used by obligated parties to show compliance with the program's volume obligations.

[6]  The proposal also included estimates for production of renewable electricity under the program, but the final RFS Set Rule did not include provisions for the allowance of generation of RINs for renewable electricity and, therefore, did not include those estimates in the final cellulosic biofuel volume requirements. 88 Fed. Reg. at 44,484.

addition, when EPA underestimates available volumes and there is an oversupply of RINs, this has significant negative implications for the renewable natural gas industry. *See id.* at 20-22; *see also* EPA, *Renewable Fuel Standard (RFS) Program: RFS Annual Rules - Regulatory Impact Analysis*, at 45-47 (2022), *available at* www.regulations.gov (EPA-HQ-OAR-2021-0427-0083) (noting volatility of RIN prices for cellulosic biofuels due to small refinery exemptions creating oversupply).

A decision in this litigation in favor of AFPM (or other petitioners) that seeks to negatively impact or reduce the cellulosic biofuel requirements would adversely affect the members of RNG Coalition that have invested in renewable natural gas and/or generate RINs under the Renewable Fuel Standard program, including, but not limited to, developers, owners and operators of renewable natural gas facilities, marketers, and distributors of CNG/LNG. As such, RNG Coalition has a substantial interest in the outcome of this case.

## II.    Reasons for Granting Intervention.

RNG Coalition should be permitted to intervene in this case because it has a significant, direct interest in the outcome of this case that will be harmed, and that interest will not be adequately represented in the absence of intervention. In addition, the motion to intervene is timely, and granting intervention will not adversely affect any party or the timely resolution of the case.

A.    **RNG Coalition has a direct and substantial interest in the outcome of this case.**

RNG Coalition has a substantial interest in the subject matter of this case because its members are subject to the regulations at issue. The Renewable Fuel Standard program is aimed at increasing renewable fuel production, and renewable natural gas makes up the vast majority of the cellulosic biofuel category. This Court has consistently found the regulated industry has standing in challenges to the relevant rule. *See S. Coast Air Quality Mgmt. Dist. v. EPA*, 472 F.3d 882, 895-96 (D.C. Cir. 2006). The standing of biofuel producers in actions related to EPA's implementation of the volume requirements is "self-evident." *Sierra Club v. EPA,* 292 F.3d 895, 899-900 (D.C. Cir. 2002).

RNG Coalition's interests in this case are more than sufficient to support intervention. This Court has recognized that the interest requirement under Federal Rule of Civil Procedure 24(a) is met when the proposed intervenor has constitutional standing. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). RNG Coalition meets Article III standing requirements because its members produce fuels eligible under the Renewable Fuel Standard program that is the subject of this litigation, and the individual participation of the members in the case is not required. *See AFPM v. EPA,* 3 F.4th 373, 379 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 759 (2022); *Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 664-65 (D.C. Cir. 2019),

*cert. denied*, 140 S. Ct. 2792 (2020); *Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1015-1016 (D.C. Cir. 2016).

RNG Coalition, which represents companies that produce the vast majority of fuels used to meet the cellulosic biofuel volume requirements under the Renewable Fuel Standard program, has a significant interest in ensuring the agency fully implements the program. As noted above, AFPM has opposed the position of RNG Coalition with respect to EPA's authority to increase the cellulosic biofuel volumes under the Set provisions of the Renewable Fuel Standard program. As this Court has found, the Renewable Fuel Standard program is a market forcing policy, essentially setting the market for renewable fuels in the transportation sector, including cellulosic biofuels, and reducing those requirements will adversely impact demand. *See Americans for Clean Energy v. EPA*, 864 F.3d 691, 710 (D.C. Cir. 2017). An adverse ruling could impact investments that have been made in response to the Renewable Fuel Standard program and create uncertainty and volatility in the market due to an oversupply of RINs.

Where petroleum refiners (i.e., obligated parties) are competitors of biofuels in the transportation sector, easing the requirements under the Renewable Fuel Standard program will benefit RNG Coalition members' competitors. "The [Supreme] Court routinely recognizes probable economic injury resulting from agency actions that alter competitive conditions as sufficient to satisfy the [Article

III 'injury-in-fact' requirement]." *Am. Petroleum Inst. v. Johnson*, 541 F. Supp. 2d 165, 177 (D.D.C. 2008) (quoting 3 Richard Pierce, Administrative Law Treatise §16.4 at 1122 (4th ed. 2002)) (alterations in original); *see also Clinton v. City of N.Y.*, 524 U.S. 417, 432-33 (1998) (finding regulatory impact on business decisions raises "sufficient likelihood of economic injury to establish standing under [Supreme Court] precedent") (citations omitted).

Moreover, because this is the first rulemaking under the "Set" provisions for cellulosic biofuel, the Court's ruling could set precedent on how EPA sets the applicable volumes for future years. Thus, the ability of RNG Coalition to protect the interests of its members will be impaired if it is not able to participate in this litigation.

### B. The interests of RNG Coalition are not adequately represented by any of the existing parties.

Intervention is appropriate and necessary to adequately represent and protect RNG Coalition's interests. Courts have long recognized that the burden of showing inadequate representation "is not onerous," and an "applicant need only show that representation of his interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (other citations omitted).

Based on the positions taken in AFPM's comments on the proposed rule, it is clear that AFPM and RNG Coalition have divergent interests regarding EPA's implementation of the volume requirements under the program. To our knowledge, none of the other petitioners represent the interests of the renewable natural gas industry and, in any event, are challenging EPA's actions. To the extent those challenges involve the cellulosic biofuel volume requirements that RNG Coalition seeks to support,[7] the interests of the other petitioners would similarly be divergent.

We are also aware that Growth Energy has moved to intervene in support of EPA in *Center for Biological Diversity v. EPA*, No. 23-1177, which may also include intervention with respect to consolidated cases under D.C. Circuit Rule 15(b). However, Growth Energy represents the ethanol industry, not the renewable natural gas industry. *See* Mot. of Growth Energy to Intervene at 10, No. 23-1177, Doc. # 2012710 (filed Aug. 15, 2023).[8] Moreover, in their comments on the proposal, Growth Energy took positions that were in opposition to those taken by RNG Coalition and the renewable natural gas industry, including positions related to

---

[7] As of the date of this filing only one statement of issues has been submitted.

[8] As noted above, Clean Fuels Alliance America has also filed a motion to intervene in support of EPA. Clean Fuels Alliance America represents "biodiesel and renewable diesel producers" and supporting industries. Clean Fuels Alliance America Mot. to Intervene at 1, No. 23-1177, Doc. # 2020672 (filed Oct. 5, 2023). Additional motions to intervene may be filed. To our knowledge, none of the other potential movants represent the interests of the renewable natural gas industry as does RNG Coalition.

treatment of the cellulosic biofuel volume category. *See* Comments of Growth Energy, Feb. 10, 2023, at 52-53, *available at* www.regulations.gov (EPA-HQ-OAR-2021-0427-0796). As such, Growth Energy cannot represent the interests of RNG Coalition's members.

This Court has also looked "skeptically on government entities serving as adequate advocates for private parties." *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015) (citing *Fund for Animals*, 322 F.3d at 736 and *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977)); *see also Humane Soc'y of U.S. v. USDA*, No. 19-cv-2458 (BAH), 2023 U.S. Dist. LEXIS 84063, at *24 (D.D.C. May 12, 2023) ("Further, '[a]lthough the intervenor and the government entity involved in the litigation frequently may agree on a legal position or course of action, the D.C. Circuit nonetheless 'often [has] concluded that governmental entities do not adequately represent the interests of aspiring intervenors.''") (quoting *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 279 (D.D.C. 2014) (quoting *Fund for Animals*, 322 F.3d at 736)). Respondents are the agency responsible for implementing and administering the Renewable Fuel Standard and its Administrator.[9] Accordingly, Respondents are not able to represent adequately RNG Coalition's member companies' interests. *See Dimond*, 792 F.2d at

---

[9]  Center for Biological Diversity has also named federal agencies that EPA is directed to consult with under the Endangered Species Act, which also do not represent the interests of industry.

192-93 ("A government entity ... is charged by law with representing the public interest of its citizens. ... The [government entity] would be shirking its duty were it to advance th[e] narrower interest [of a business concern] at the expense of its representation of the general public interest") (citations omitted); *see also Natural Res. Def. Council*, 561 F.2d at 912 (finding EPA did not adequately represent proposed industry intervenors whose "interest is more narrow and focussed than EPA's, being concerned primarily with the regulation that affects *their* industries"). Moreover, RNG Coalition provides a different perspective and outlined different positions on issues raised by EPA in the proposed rule regarding cellulosic biofuels. Thus, RNG Coalition can more than meet the minimal burden to show its interests are not adequately represented by the existing parties.

### C.    The requested intervention would be timely and in line with the orderly resolution of this case.

Under Federal Rule of Appellate Procedure 15(d), a motion for leave to intervene "must be filed within 30 days after the petition for review is filed and must contain a concise statement of the interest of the moving party and the grounds for intervention." Although the deadline for procedural motions has been extended in this case to October 23, 2023 (Order, Aug. 23, 2023, Doc. # 2013744), the current motion is being filed within 30 days of the filing of AFPM's petition for review and, therefore, is timely.

13

Moreover, this case is in its early stages, and no schedule for the filing of briefs has been issued to date. Granting RNG Coalition intervention will not delay the proceedings in this Court and will not cause undue prejudice to any party. On the other hand, if intervention is not granted, RNG Coalition's ability to defend the interests of its members in this proceeding will be severely prejudiced.

WHEREFORE, Coalition for Renewable Natural Gas respectfully requests that the Court enter an order granting leave to intervene in support of Respondents.

Respectfully submitted,

/s/ Sandra P. Franco
Sandra P. Franco
Franco Environmental Law, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
T 202 256-6115
sandra@francoenvironmentallaw.com

*Counsel for Coalition for Renewable Natural Gas*

Of Counsel:

David Cox
General Counsel
COALITION FOR RENEWABLE NATURAL GAS
1017 L Street, #513
Sacramento, CA 95814

Dated:  October 8, 2023

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that:

1)      This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,029 words, excluding the exempted portions.

2)      This motion complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5-6) because it was prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

/s/ Sandra P. Franco
Sandra P. Franco

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | No. 23-1177 (and |
| | ) | consolidated cases) |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, ET AL., | ) | |
| | ) | |
| *Respondents.* | ) | |

**RULE 26.1 CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Coalition for Renewable Natural Gas ("RNG Coalition") makes the following disclosure:

RNG Coalition has no parent companies, and no publicly held company has a 10% or greater ownership interest. It has not issued shares or debt securities to the public.

RNG Coalition is a non-profit association of companies and organizations dedicated to the advancement of renewable natural gas as a clean, green, alternative, and domestic energy and fuel resource. It advocates on behalf of its members and provides education for the public in support of the sustainable development, deployment, and utilization of renewable natural gas, including

1

participating in regulatory proceedings and litigation involving implementation of

the Renewable Fuel Standard program by EPA, as well as other regulatory actions

that may impact the renewable natural gas industry. RNG Coalition's membership

includes companies throughout the value chain of waste feedstock conversion to

transportation fuel under the Renewable Fuel Standard program. It is a "trade

association" as defined in Circuit Rule 26.1(b).

Respectfully submitted,

/s/ Sandra P. Franco
Sandra P. Franco
Franco Environmental Law, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
T 202 256-6115
sandra@francoenvironmentallaw.com

*Counsel for Coalition for Renewable Natural Gas*

Of Counsel:

David Cox
General Counsel
COALITION FOR RENEWABLE NATURAL GAS
1017 L Street, #513
Sacramento, CA 95814

Dated:  October 8, 2023

2

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) | |
| *Petitioner,* | ) ) | |
| v. | ) ) | No. 23-1177 (and consolidated cases) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL., | ) ) ) | |
| *Respondents.* | ) ) ) | |

**CERTIFICATE AS TO PARTIES**

As required by D.C. Circuit Rule 27(a)(4) and pursuant to D.C. Circuit Rule 28(a)(1)(A), the following Certificate as to Parties and Amici is made on behalf of Coalition for Renewable Natural Gas.

This is a matter on petition for review of an agency action undertaken by the U.S. Environmental Protection Agency entitled "Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes," published at 88 Fed. Reg. 44,468 (July 12, 2023). There was no action in the district court, and so there were no parties in the district court.

As of the time of filing, the parties are:

**<u>Petitioners:</u>**

Center for Biological Diversity, No. 23-1177;

Neste US, Inc., No. 23-1240;

American Refining Group, Inc, Calumet Montana Refining, LLC; Calumet Shreveport Refining, LLC; Ergon Refining, Inc.; Ergon-West Virginia, Inc.; Hunt Refining Company; Par Hawaii Refining, LLC; Placid Refining Company LLC; REH Company; San Joaquin Refining Co., Inc.; U.S. Oil & Refining Company; Wyoming Refining Company; Countrymark Refining and Logistics, LLC; The San Antonio Refinery LLC; and Wynnewood Refining Company, LLC, No. 23-1243;

REH Company, No. 23-1244;

Clean Fuels Alliance America, No. 23-1245;[10]

Sustainable Advanced Biofuel Refiners Coalition, No. 23-1246;

American Fuel & Petrochemical Manufacturers, No. 23-1247;

Coalition for Renewable Natural Gas, No. 23-1248;

National Wildlife Federation, No. 23-1249.

**<u>Respondents:</u>**

U.S. Environmental Protection Agency;

Michael S. Regan, Administrator, U.S. Environmental Protection Agency;

---

[10] On October 5, 2023, Clean Fuels Alliance America filed a stipulation to voluntarily dismiss their petition, Doc. # 2020671.

U.S. Fish & Wildlife Service;

National Marine Fisheries Service.

**Movant-Intervenor for Respondent:**

Growth Energy;

Clean Fuels Alliance America.


Coalition for Renewable Natural Gas is not aware that any parties have been granted intervention or participation as *amicus curiae* at this time.

Respectfully submitted,

/s/ Sandra P. Franco
Sandra P. Franco
Franco Environmental Law, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
T 202 256-6115
sandra@francoenvironmentallaw.com

*Counsel for Coalition for Renewable Natural Gas*

Of Counsel:

David Cox
General Counsel
COALITION FOR RENEWABLE NATURAL GAS
1017 L Street, #513
Sacramento, CA 95814

Dated: October 8, 2023

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, ) | |
| ) | |
| *Petitioner,* ) | |
| ) | |
| v. ) | No. 23-1177 (and |
| ) | consolidated cases) |
| UNITED STATES ENVIRONMENTAL ) | |
| PROTECTION AGENCY, ET AL., ) | |
| ) | |
| *Respondents.* ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2023, I caused Coalition for Renewable Natural Gas's Motion for Leave to Intervene on Behalf of Respondents and accompanying papers to be electronically filed with the Clerk of the U.S. Court of Appeals for the D.C. Circuit by using the Court's appellate CM/ECF system and that service will be accomplished by the appellate CM/ECF system.

/s/ Sandra P. Franco
Sandra P. Franco