## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
                                                    )
CENTER FOR BIOLOGICAL DIVERSITY,                    )
                                                    )
                       *Petitioner*,    )
                                                    )
      v.                                       )        No. 23-1177 (and
                                                    )        consolidated cases)
UNITED STATES ENVIRONMENTAL                         )
PROTECTION AGENCY *et al.*,                         )
                                                    )
                                                    )
                    *Respondents*.   )
_____)

## MOTION OF AMERICAN PETROLEUM INSTITUTE
## FOR LEAVE TO INTERVENE

Pursuant to Federal Rule of Appellate Procedure 15(d) and Circuit Rule 15(b), the American Petroleum Institute ("API") respectfully moves for leave to intervene in the above-captioned cases, as well as "all [other] cases before this court involving the same agency action or order, including later filed cases," Circuit Rule 15(b).[1]  These cases concern a final rule of the Environmental Protection Agency ("EPA") entitled "Renewable Fuel Standard (RFS) Program: Standards for 2023–2025 and Other Changes," 88 Fed. Reg. 44,468 (July 12, 2023), to be codified at 40 C.F.R. Parts 80 and 1090 ("*Final Rule*").

---

[1] The above-captioned cases include Nos. 23-1240, 23-1243, 23-1244, 23-1246, 23-1247, 23-1248, and 23-1249.

Petitioner in the lead case, No. 23-1177, filed its petition for review of the *Final Rule* on July 13, 2023. *See* Doc. No. 2008130. On August 15, 2023, Growth Energy moved to intervene. *See* Doc. No. 2012710. Additional petitions for review were timely filed on September 8, 2023, *see* Doc. Nos. 2016197, 2016331; and September 11, 2023, *see* Doc. Nos. 2016410, 2016422, 2016341, 2016347, 2016287, 2016354. The later-filed cases were consolidated with the lead case by orders dated September 11, 2023, *see* Doc. No. 2016202; and September 12, 2023, *see* Doc. Nos. 2016460. On October 5, 2023, Clean Fuels Alliance dismissed its petition for review in No. 23-1245, *see* Doc. No. 2020671, and moved instead to intervene, *see* Doc. No. 2020672. On October 10, 2023, American Fuel & Petrochemical Manufacturers moved to intervene in Nos. 23-1240, 23-1246, and 23-1248, *see* Doc. No. 2021091.

This motion is timely because it is filed within 30 days of the petitions for review in Nos. 23-1244, 23-1246, 23-1247, 23-1248, and 23-1249, which were filed on September 11, 2023. *See* Fed. R. App. P. 15(d); Circuit Rule 15(b). Counsel for API is authorized to state that (1) Petitioner American Fuel & Petrochemical Manufacturers consents to API's motion; (2) the following parties take no position on the motion: Center for Biological Diversity, National Wildlife Federation, Growth Energy, American Refining Group, Inc., Calumet Montana Refining, LLC, Calumet Shreveport Refining, LLC, Ergon Refining, Inc., Ergon-

West Virginia, Inc., Hunt Refining Company, Par Hawaii Refining, LLC, Placid Refining Company LLC, REH Company, San Joaquin Refining Co., Inc., U.S. Oil & Refining Company, Wyoming Refining Company, Countrymark Refining and Logistics, LLC, The San Antonio Refinery LLC, and Wynnewood Refining Company; (3) Respondents EPA, Administrator Regan, United States Fish and Wildlife Service, and National Marine Fisheries Service reserve their position on the motion; and (4) the following parties have provided no response when asked for their positions on API's motion: Neste US, Inc., Sustainable Advanced Biofuels Refiners Coalition, Coalition for Renewable Natural Gas, Clean Fuels Alliance America, and Coalition for Renewable Natural Gas.

## SUMMARY OF ARGUMENT

API is a national trade association that represents a broad range of petroleum producers, including many companies that are obligated parties under EPA's Renewable Fuel Standard ("RFS") program. *See* Am. Petroleum Institute, Members, http://www.api.org/membership/members (last visited Oct. 5, 2023). The *Final Rule* at issue in these cases establishes the RFS program compliance duties of obligated parties for 2023, 2024, and 2025, including how many compliance credits they must obtain. API's member companies therefore have a direct and substantial financial stake in the provisions of the *Final Rule* and the disposition of these cases. That interest is sufficient to meet the requirements for

intervention under Federal Rule of Appellate Procedure 15(d) and applicable precedent.  API was an active participant in the rulemaking proceeding before EPA, and it has been a party in prior cases before this Court litigating aspects of EPA's rules for the RFS program.[2]

## BACKGROUND

1.  *API and the RFS Program.*  API is a nationwide, not-for-profit trade association representing approximately 600 corporate members engaged in all aspects of the oil and gas industry, including science and research, exploration and production of oil and natural gas, transportation, refining of crude oil, and marketing of oil and gas products.  API's members include producers, refiners, pipeline operators, and marine transporters, as well as service and supply companies.  API regularly represents its members in judicial, legislative, and administrative forums, including in proceedings regarding implementation of the Clean Air Act.

---

[2] *See, e.g.*, *Sinclair Wyoming Refining Co. v. EPA*, No. 22-1210 (D.C. Cir.); *RFS Power Coalition v. EPA*, No. 20-1046 (D.C. Cir.); *Growth Energy v. EPA*, 5 F.4th 1 (D.C. Cir. 2021); *American Fuel & Petrochemical Manufacturers v. EPA*, 937 F.3d 559 (D.C. Cir. 2019); *Alon Refining Krotz Springs, Inc. v. EPA*, 936 F.3d 628 (D.C. Cir. 2019); *Americans for Clean Energy v. EPA*, 864 F.3d 691 (D.C. Cir. 2017); *Monroe Energy, LLC v. EPA*, 750 F.3d 909 (D.C. Cir. 2014); *API. v. EPA*, 706 F.3d 474 (D.C. Cir. 2013); *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145 (D.C. Cir. 2010).

This suit concerns one aspect of the Clean Air Act's regulatory regime: the RFS program, which is designed to regulate the quantity of renewable fuels used in transportation fuels in the United States. The RFS program was enacted in 2005, *see* Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594, and expanded in 2007, *see* Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 142. As amended, the Clean Air Act imposed annual volume requirements for four different categories of renewable fuel: renewable fuel, advanced biofuel, cellulosic biofuel, and biomass-based diesel. *See* 42 U.S.C. § 7545(*o*)(2)(B).[3] For the first three categories of renewable fuel, the Clean Air Act imposed annual requirements through 2022, and for biomass-based diesel through 2012. *Id.* § 7545(*o*)(2)(B)(i).

For subsequent calendar years—including the years covered by the *Final Rule* at issue here—the Clean Air Act directs EPA, in coordination with the Secretaries of Agriculture and Energy, to establish volume requirements based on consideration of several statutory factors and subject to several limitations. *See id.* § 7545(*o*)(2)(B)(ii)–(v). EPA must then promulgate regulations implementing those volume requirements. *Id.*

---

[3] These categories are "nested": biomass-based diesel and cellulosic biofuel are types of advanced biofuel, and advanced biofuel is a type of renewable fuel.

From 2005 to 2022, producers, refiners, and importers of non-renewable fuels—including API's member companies—were required to meet the annual volume requirements by complying with Renewable Volume Obligations ("RVOs") for each of the four renewable-fuel categories each year. These RVOs were computed by multiplying the volume of non-renewable gasoline and diesel an obligated party produces or imports in a calendar year by the applicable percentage standards for that year. *See Id.* § 7545(*o*)(3)(B)(i).[4] EPA is continuing to implement the RFS program for 2023–2025 using the same methods. *See* 88 Fed. Reg. at 44,519.

EPA has established a compliance mechanism for the RFS program based on Renewable Identification Numbers ("RINs"). In brief, companies that produce renewable fuel generate unique RINs that may be bought and sold. Obligated parties are required to obtain and "retire" a number of RINs in proportion to their RVOs. If an obligated party fails to demonstrate compliance with its RFS obligations for a given year, it may face substantial daily penalties. *See* 42 U.S.C. § 7545(d)(1); 40 C.F.R. § 80.1463.

The Clean Air Act also includes waiver provisions that EPA may (and, in some instances, must) use to tailor the volume requirements to conditions in the

---

[4] For example, if the standard for advanced biofuel was one percent in a given year and an obligated party produced 1 billion gallons of non-renewable gasoline in that year, the party's advanced biofuel RVO for the year would be 10 million gallons.

marketplace.  *See* 42 U.S.C. § 7545(*o*)(7).  Under the statute's "general" waiver provision, EPA may waive the volume requirements "in whole or in part … based on a determination by the Administrator" that (i) "implementation of the requirement would severely harm the economy or environment of a State, a region, or the United States" or (ii) "there is an inadequate domestic supply."  *Id.* § 7545(*o*)(7)(A)(i)–(ii).  The statute also requires EPA to "reduce the applicable volume of cellulosic biofuel" in a given year "to the projected volume" of cellulosic biofuel production for that year if the projected production level "is less than the minimum applicable volume" established by EPA.  *Id.* § 7545(*o*)(7)(D)(i).  When exercising that cellulosic-biofuel waiver authority, the Administrator "may also reduce the applicable volume[s] of renewable fuel and advanced biofuels … by the same or a lesser volume."  *Id.*

2.  *The Final Rule.*  Among other things, the *Final Rule* at issue here establishes the volume requirements and sets the annual percentage standards for the RFS program for 2023, 2024, and 2025.  *See* 88 Fed. Reg. at 44,470–71. These standards in turn define the RVOs that API's member companies must meet for those years—i.e., the number of RINs the companies must obtain.

API participated in the administrative proceedings that culminated in publication of the *Final Rule* by filing written comments on EPA's proposal.[5]

---

[5] *See* Comments of the American Petroleum Institute, *Proposed Rule: Renewable*

More broadly, API regularly participates in proceedings concerning the RFS program and has litigated several suits in this Court concerning annual volume requirements established by EPA.[6]

## ARGUMENT

The motion should be granted for two principal reasons. *First*, the motion is timely filed and meets all the other requirements of Federal Rule of Appellate Procedure 15(d). *Second*, API has associational standing with respect to the *Final Rule* and satisfies the additional requirements for intervention established by applicable precedent. *See, e.g.*, *Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002, 1010 (2022); *Berger v. N.C. State Conference of the NAACP*, 142 S. Ct. 2191, 2200–01 (2022).

1. Rule 15(d) provides a minimal set of criteria for intervention. It provides that

> Unless a statute provides another method, a person who wants to intervene in a proceeding under this rule must file a motion for leave to intervene with the circuit clerk and serve a copy on all parties. The motion—or other notice of intervention authorized by statute—must be filed within 30 days after the petition for review is filed and must contain a concise statement of the interest of the moving party and the grounds for intervention.

---

*Fuel Standard (RFS) Program: Standards for 2023–2025 and Other Changes*, Docket ID No. EPA-HQ-OAR-2021-0427 (Feb. 10, 2023), https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0427-0627.

[6] *See supra* note 2.

This motion satisfies Rule 15(d)'s criteria. API is a "person" as defined in the Clean Air Act, *see* 42 U.S.C. § 7602(e), and therefore is entitled to seek intervention. The Act does not provide "another method" for intervention, and this motion has been duly filed with the Circuit clerk and served on all parties. Further, the motion is timely because it is filed within 30 days of the petitions for review in Nos. 23-1244, 23-1246, 23-1247, 23-1248, and 23-1249, which were filed on September 11, 2023. *See* Circuit Rule 15(b).

As to API's interest and the grounds for intervention, the analysis is straightforward. Many of API's member companies are obligated parties under the RFS program.[7] As obligated parties, these companies have a direct and substantial financial stake in the content of the volume requirements and percentage standards set in the *Final Rule*. Any increase or decrease in those requirements—and any change in the point of obligation or the formulas used to compute the requirements—would translate directly into a change in the quantity of RINs that API's member companies must obtain. *See Monroe Energy*, 740 F.3d at 915 ("The more rigorous the fuel standards, the more RINs [obligated parties] will have to purchase."). API members thus have a strong interest in ensuring that EPA's 2023,

---

[7] *See* Am. Petroleum Institute, Members, http://www.api.org/membership/members (last visited October 5, 2023) (identifying refiners and importers, such as BP America, Inc., ExxonMobil, Marathon Oil Company, and Shell USA, Inc., as API members).

2024, and 2025 volume requirements and percentage standards comply with the Clean Air Act and reflect an accurate assessment of market conditions.

This Court has consistently granted regulated parties' motions to intervene in similar situations. *See, e.g.*, Order, *RFS Power Coalition v. EPA*, No. 20-1046, Doc. No. 1843937, at 1 (D.C. Cir. May 22, 2020) (granting API motion for leave to intervene in challenges to RFS 2020 final rule); Order, *Growth Energy v. EPA*, No. 19-1023, Doc. No. 1784196, at 1 (D.C. Cir. Apr. 23, 2019) (granting API motion for leave to intervene in challenges to RFS 2019 final rule); Order, *Am. Fuel & Petrochemical Mfrs. v. EPA*, No. 17-1258, Doc. No. 1725309, at 1 (D.C. Cir. Apr. 5, 2018) (granting API motion for leave to intervene in challenges to RFS 2018 final rule); Order, *Coffeyville Resources Refining & Marketing LLC v. EPA*, No. 17-1044, Doc. No. 17062266 (D.C. Cir. Nov. 28, 2017) (granting API motion for leave to intervene in challenges to RFS 2017 final rule); Order, *Americans for Clean Energy et al. v. EPA*, No. 16-1005, Doc. No. 1611965 (D.C. Cir. May 5, 2016) (granting API motion for leave to intervene in challenges to RFS 2014–2016 final rule).

To the extent the considerations in Federal Rule of Civil Procedure 24(a) inform the Court's analysis, *see Berger*, 142 S. Ct. at 2200–01; *Cameron*, 142 S. Ct. at 1010, API meets the requirements for intervention of right because it "claims an interest relating to the … [rulemaking] transaction that is the subject of the

action, and is so situated that disposing of the action may as a practical matter impair or impede [API's] ability to protect its interest," Fed. R. Civ. P. 24(a); *see also United States v. Am. Telephone & Telegraph Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) (party entitled to intervention where it stands to "gain or lose by the direct legal operation and effect of the judgment" (quotation marks omitted)). The exception for instances in which the "existing parties adequately represent" the movant's "interest," Fed. R. Civ. P. 24(a)(2), is inapplicable here because many of API's member companies are not represented by any other party to this case.[8] In any event, the interests outlined above establish that API also meets the lower threshold for permissive intervention. *See* Fed. R. App. P. 24(b) (permitting intervention where party "has a claim or defense that shares with the main action a common question of law or fact").

2. This Court has held that "[a]n intervenor must … satisfy the requirements of Article III standing imposed on petitioners." *Ala. Mun. Distribs. Grp. v. FERC*, 300 F.3d 877, 879 n.2 (D.C. Cir. 2002). The "irreducible constitutional minimum" for standing is a concrete injury that is fairly traceable to the challenged conduct

---

[8] EPA cannot adequately represent the private-sector interests of API and its member companies. *See, e.g.*, *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 321 (D.C. Cir. 2015); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736-37 (D.C. Cir. 2003); *see also Berger*, 142 S. Ct. at 2203 (explaining that adequacy of representation exception "present[s] proposed intervenors with only a minimal challenge").

and that will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A trade association such as API meets these criteria when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

This Court has already applied these criteria in the context of the RFS program. It held in *Monroe Energy* that an obligated party has Article III standing where it "is contesting its own compliance obligations under the RFS program as implemented in [an EPA] Final Rule." 750 F.3d at 915. "Because the financial burden of purchasing RINs is a cognizable injury-in-fact, and it is fairly traceable to the [annual] fuel standards and remediable by vacatur of the Final Rule," obligated parties have standing to litigate petitions for review of EPA's annual percent standards. *Id.* As noted, this Court has repeatedly granted API leave to intervene in RFS cases.[9]

API's members have standing under *Monroe Energy* because their compliance obligations will rise or fall with the fate of the *Final Rule*. If the

_____

[9] Indeed, because API's member companies are the "object of the action" taken by EPA in the *Final Rule*, their standing is "self-evident." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002) (citation and quotation marks omitted).

petitions for review are denied, the Court's ruling will confirm the extent of obligated parties' regulatory burdens for 2023, 2024, and 2025 under the *Final Rule*. Conversely, if the *Final Rule* is vacated or remanded, API's member companies' regulatory obligations for those years may be reduced or increased. Either way, API's members would have standing to sue in their own right, litigation of this suit is germane to API's purpose as a trade association, and participation by individual member companies is unnecessary given the equitable relief requested by Petitioners. *Cf. Am. Petroleum Inst. v. EPA*, 706 F.3d 474 (D.C. Cir. 2013) (successful API challenge to EPA's cellulosic-biofuels requirement for 2012). That is all *Hunt* and this Court's cases require.

## CONCLUSION

For the foregoing reasons, API's motion for leave to intervene should be granted. Pursuant to Circuit Rule 15(b), the Court should also grant API intervention in "all cases before this court involving the same agency action or order, including later filed cases."

Respectfully submitted,

/s/ Kevin King

John Wagner
Michele Schoeppe
American Petroleum Institute
200 Massachusetts Ave. NW
Suite 1100
Washington, DC 20001

Robert A. Long, Jr.
Kevin King
Thomas Brugato
Daniel G. Randolph
MaKade C. Claypool
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
rlong@cov.com
kking@cov.com
tbrugato@cov.com
drandolph@cov.com
mclaypool@cov.com

*Attorneys for Movant-Intervenor*
*American Petroleum Institute*

October 11, 2023

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| *Petitioner*, | ) | |
| v. | ) | No. 23-1177 (and consolidated cases) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY *et al.*, | ) | |
| *Respondents*. | ) | |

### CERTIFICATE AS TO PARTIES AND AMICI

Pursuant to Circuit Rules 27(a)(1)(4) and 28(a)(1)(A), Movant-Intervenor American Petroleum Institute ("API") states that the parties in the lead case, No. 23-1177, are Petitioner Center for Biological Diversity and Respondents U.S. Environmental Protection Agency ("EPA"), United States Fish and Wildlife Service, and National Marine Fisheries Service.  The parties in the remaining cases are as follows:

- No. 23-1240: Petitioner Neste US, Inc., Respondent EPA, and Movant-Intervenors Growth Energy, Clean Fuels Alliance America, Coalition for Renewable Natural Gas, and American Fuel & Petrochemical Manufacturers;

- No. 23-1243: Petitioners American Refining Group, Inc.; Calumet Montana Refining, LLC; Calumet Shreveport Refining, LLC; Ergon Refining, Inc.; Ergon-West Virginia, Inc.; Hunt Refining Company; Par Hawaii Refining, LLC; Placid Refining Company LLC; REH Company; San Joaquin Refining Co., Inc.; U.S. Oil & Refining Company; Wyoming Refining Company; Countrymark Refining and Logistics, LLC; The San Antonio Refinery LLC; Wynnewood Refining Company, LLC, Respondent EPA, and Movant-Intervenors Clean Fuels Alliance America and Coalition for Renewable Natural Gas;

- No. 23-1244: Petitioner REH Company, Respondent EPA, and Movant-Intervenors Clean Fuels Alliance America and Coalition for Renewable Natural Gas;

- No. 23-1246: Petitioner Sustainable Advanced Biofuel Refiners Coalition, Respondent EPA, and Movant-Intervenors Clean Fuels Alliance America, Coalition for Renewable Natural Gas, and American Fuel & Petrochemical Manufacturers;

- No. 23-1247: Petitioner American Fuel & Petrochemical Manufacturers, Respondent EPA, and Movant-Intervenors Clean Fuels Alliance America and Coalition for Renewable Natural Gas;

- No. 23-1248: Petitioner Coalition for Renewable Natural Gas, Respondent EPA, and Movant-Intervenors Clean Fuels Alliance America, Coalition for Renewable Natural Gas, and American Fuel & Petrochemical Manufacturers;

- No. 23-1249: Petitioner National Wildlife Federation, Respondents EPA and EPA Administrator Michael S. Regan, and Movant-Intervenors Clean Fuels Alliance America and Coalition for Renewable Natural Gas.

There are no amici at this time.

Respectfully submitted,

*/s/ Kevin King*
Kevin King

*Attorney for Movant-Intervenor*
*American Petroleum Institute*

October 11, 2023

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

CENTER FOR BIOLOGICAL DIVERSITY,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY *et al.*,

*Respondents*.
_____

No. 23-1177 (and
consolidated cases)

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Petitioner American Petroleum Institute ("API") states as follows:

API is a nationwide, not-for-profit association representing approximately 600 member companies engaged in all aspects of the oil and gas industry, including science and research, exploration and production of oil and natural gas, transportation, refining of crude oil, and marketing of oil and gas products. API has no parent companies, and no publicly held company has a 10 percent or greater ownership interest in API. API is a "trade association" within the meaning of Circuit Rule 26.1. API is a continuing association operating for the purpose of

promoting the general commercial, professional, legislative, or other interests of its

members.

Respectfully submitted,

/s/ Kevin King
Kevin King

Attorney for Movant-Intervenor
October 11, 2023                              American Petroleum Institute

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,903 words, excluding the portions of the motion (and associated certificates, etc.) exempted by Rule 27(a)(2)(B). This motion complies with the typeface and type style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman and 14-point font.

*/s/ Kevin King*
Kevin King

*Attorney for Movant-Intervenor*
October 11, 2023                    *American Petroleum Institute*

## CERTIFICATE OF SERVICE

I certify that on October 11, 2023, I caused the foregoing motion (and supporting papers) to be electronically filed with the Clerk of the U.S. Court of Appeals for the D.C. Circuit by using the Court's CM/ECF system.  I further certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*/s/ Kevin King*
Kevin King

*Attorney for Movant-Intervenor*
*American Petroleum Institute*

October 11, 2023