**ORAL ARGUMENT NOT YET SCHEDULED**

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |  |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| | ) | No. 23-1177 |
| | ) | (consolidated with |
| v. | ) | Nos. 23-1240, 23-1243, |
| | ) | 23-1244, 23-1246, 23-1247, |
| | ) | and 23-1249) |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, *et al.* | ) | |
| | ) | |
| *Respondents*. | ) | |
| | ) | |

## JOINT SUBMISSION ADDRESSING PROPOSED
## BRIEFING SCHEDULE AND FORMAT

All Petitioners (except SABR Coalition and Neste), all Respondents, and all Intervenors in the above-captioned consolidated cases respectfully submit this joint proposal on briefing schedule, format, and word limits, as directed by this Court's December 1, 2023 Order.

The proposal includes three sections. Section I provides a short background on the parties to these consolidated cases. Section II describes a proposed briefing schedule that is agreed to by all parties to this joint proposal. Section III sets forth the parties' proposals for the

words to be allotted for briefing and justification for requesting a different allotment of words.

### SECTION I:
### BACKGROUND

This case involves seven consolidated petitions for review, filed by 20 parties, that challenge on various grounds under the Clean Air Act the final rule published on July 12, 2023, by respondent Environmental Protection Agency ("EPA"), as well as a petition that also challenges the National Marine Fisheries Service's ("NMFS") and Fish and Wildlife Service's ("FWS") letters concurring in EPA's determination that the rulemaking was not likely to adversely affect a listed species under the Endangered Species Act. *See Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes*, 88 Fed. Reg. 44,468 (July 12, 2023); Ltr. to S. Dunham, EPA, from C. Aubrey, U.S. Fish & Wildlife Serv. (August 3, 2023); Ltr. to S. Dunham, EPA, from T. Dobrzynski, Nat'l Marine Fisheries Serv. (July 27, 2023).

The Petitioners fall into three general groups, with each group having generally aligned interests, although within these groups, petitioners represent different interests and raise different claims.[1]

*First*, the "Obligated Party Petitioners" includes American Fuel & Petrochemical Manufacturers, American Refining Group, Inc., Calumet Montana Refining, LLC, Calumet Shreveport Refining, LLC, Ergon Refining, Inc., Ergon-West Virginia, Inc., Hunt Refining Co., Par Hawaii Refining, LLC, Placid Refining Company LLC, San Joaquin Refining Co., Inc., U.S. Oil & Refining Company, Wyoming Refining Company, Countrymark Refining and Logistics, LLC, The San Antonio Refinery LLC, Wynnewood Refining Company, LLC, and REH Company.

*Second*, the "Environmental Petitioners" includes Center for Biological Diversity and National Wildlife Federation.

*Third*, "Renewable Energy Petitioners" include Sustainable Advanced Biofuel Refiners Coalition ("SABR Coalition"), which is a trade association for the biodiesel industry, and Neste US, Inc. ("Neste"), a renewable diesel supplier.

---

[1] Intervenor Coalition for Renewable Natural Gas ("RNG Coalition") takes no position on the proposed grouping of the different petitioners or whether their interests are "generally aligned."

Respondents are EPA, NMFS, and FWS.  Respondents seek to file a single brief that totals the sum of the words allotted to each petitioner brief.

The Court granted motions to intervene on behalf of Respondents by American Petroleum Institute, Clean Fuels Alliance America, RNG Coalition, Growth Energy, Renewable Fuels Association, and AFPM. Intervenors seek to file joint briefs responding to each Petitioner's brief.

## SECTION II:
## JOINT PROPOSED BRIEFING SCHEDULE

All parties joining this proposal agree to the following proposed briefing schedule:

| | |
|---|---|
| Petitioners' Briefs | March 22, 2024 |
| Respondents' Brief | June 28, 2024 |
| Respondent-Intervenors' Briefs | July 19, 2024 |
| Petitioners' Reply Briefs | August 20, 2024 |
| Deferred Joint Appendix | August 27, 2024 |
| Final Briefs | September 6, 2024 |

The submitting parties agree that these proposed briefing deadlines are reasonable given the number and complexity of issues to be raised.

## SECTION III:
## PROPOSED BRIEFING FORMAT

The submitting parties are in agreement over all aspects of the format for briefing and the appropriate allotment of words for each brief, except that the Intervenors other than AFPM take no position on how many words to allot to Neste and SABR or whether they may file separate briefs and RNG Coalition takes no position on the appropriate allotment of words for any of the petitioners.

Among other areas of agreement, all submitting parties agree that Respondents should be allotted a number of words equal to the total number of words allotted to all petitioner briefs. The submitting parties are also in agreement that Intervenors should be permitted to file joint briefs that respond to each of the petitioner principal briefs (i.e., one joint intervenor brief responding to Obligated Party Petitioners' brief, one joint brief responding to Environmental Petitioners' brief, etc.), and that each joint intervenor brief should be allotted 70% of the words allotted to the petitioner brief to which it responds (consistent with the ratio used in Circuit Rule 32(e)(2)(B)(i)). In addition, the submitting parties agree that the reply briefs should be half the length of the opening principal

briefs (consistent with the ratio used in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii)).

The submitting parties further agree that the petitioners in this case should be allotted a total of 33,000 words for opening briefs to be divided equally among each of the three petitioner groups, with Respondents allotted an amount equal to all Petitioners, and Intervenors allotted 70% of the word count of each petitioner group for each intervenor response (except that the Intervenors other than AFPM take no position on how many words to allot to Neste and SABR or whether they may file separate briefs and RNG Coalition takes no position on any petitioner brief word count). Consistent with that proposal, and for reasons explained in more detail below, the Obligated Party Petitioners and the Environmental Petitioners are each seeking to file a joint principal brief not to exceed 11,000 words.

**JUSTIFICATIONS FOR PROPOSED BRIEFING FORMAT**

The following sections provide the parties' proposals for allotment of words and associated justifications.

## I.  Briefing Proposal

The Obligated Party Petitioners, Environmental Petitioners, and Respondents agree that the Court should allot 33,000 words, divided

equally among the three petitioner groups, for opening briefs,[2] such that

the briefing allotment would be:

| | |
|---|---|
| Obligated Parties' Opening Brief | 11,000 Words |
| Env. Parties' Opening Brief | 11,000 Words |
| Renewable Energy Parties' Opening Brief(s) | 11,000 Words Total |
| Respondents' Brief | 33,000 Words |
| Intervenors' Brief Responding to Obligated Parties | 7,700 Words |
| Intervenors' Brief Responding to Env. Parties | 7,700 Words |
| Intervenors' Brief(s) Responding to Renewable Energy Parties | 7,700 Words Total |
| Obligated Parties' Reply Brief | 5,500 Words |
| Env. Parties' Reply Brief | 5,500 Words |
| Renewable Energy Parties' Reply Brief(s) | 5,500 Words Total |

---

[2] Intervenors (except RNG Coalition) agree with the proposed word limits for the Obligated Party Petitioners and the Environmental Petitioners, and with the proposal that EPA's words should equal the total words allotted to all petitioners, but Intervenors other than AFPM take no position on the number of words SABR Coalition and Neste should be allowed or whether they may file separate briefs. While RNG Coalition agrees that Respondents' words should equal total words allotted to all petitioners, it takes no position on the grouping or appropriate word allocation for any of the petitioners.

## II.   Explanations of the Parties' Proposal

Obligated Parties Petitioners, Environmental Petitioners, and Respondents believe that Neste, which is a renewable diesel supplier, and SABR Coalition, which is a trade organization representing the biodiesel industry, are sufficiently aligned such that they should share an allotment of words equal to the number of words allotted the other petitioners, if not a single brief.[3]   Neither party persuasively explains why they should collectively be allotted 17,000 words—55 percent more words than any other petitioner group has proposed to receive in this action.

---

[3] Pursuant to this Court's internal operating procedure, "[p]arties with common interests in consolidated or joint appeals must join in a single brief where feasible."   D.C. Handbook at 38.   This Court has heard a number of RFS cases, and in each case has divided parties into three generalized groups, and required the parties to share a single brief: obligated parties; environmental groups; and renewable energy groups, even where petitioners within those general groups had different—and even competing—issues.   *See e.g.*, Order, *Growth Energy*, No. 19-1023, ECF No. 1802964 (Aug. 20, 2019) (requiring different types of renewable fuel producers to file a single "renewable fuel producer" brief, and requiring all refiners, including small refiners, to file a single brief); Order, *RFS Power Coalition v. EPA*, No. 20-1046, ECF No. 1868039 (Oct. 26, 2020) (same).   Even if Neste and SABR Coalition are not required to join a single brief, however, their "group" of petitioners should not be allotted more words than the other two groups.

Although Neste and SABR Coalition note that they intend to raise different issues, that is not unusual for petitioner groups in RFS cases and does not justify disproportionately higher word counts for Neste and SABR Coalition. Indeed, Obligated Party Petitioners include both small refiners and non-small refiners, which frequently raise different issues and sometimes disagree. Additionally, the Environmental Petitioners have different claims in this action, with one environmental petitioner (but not the other) raising Endangered Species Act issues related to letters of concurrence issued by two additional agencies in addition to Clean Air Act claims regarding EPA's rulemaking. Regardless of their disparate interests and issues, however, each of these groups of petitioners recognizes the need for judicial efficiency and agrees to file joint briefs, each limited to 11,000 words. Neste and SABR Coalition should similarly be limited to a total of 11,000 words, regardless of whether they file a joint brief or two separate briefs.

## A.     Statement of Obligated Party Petitioners in Further Support of 11,000 Words for their Principal Brief.

Obligated Party Petitioners believe that 11,000 words for their joint opening brief and 5,500 words for their joint reply brief is the minimum

amount necessary and reasonable.  Notably, Respondents have agreed to these proposed word allotments.

The number of parties who will be participating in these briefs, the number of issues the parties intend to raise, and the complex nature of issues to be jointly presented by these parties counsel against a shorter amount.  In support of this request, and based on prior briefs filed in cases addressing EPA's Renewable Fuel Standard ("RFS"), Obligated Party Petitioners anticipate that the elements of the brief required by Federal Rule of Appellate Procedure 28 and Circuit Rule 28 will require approximately 2,000 words, leaving 9,000 to divide among the issues discussed below.

Obligated Party Petitioners anticipate presenting at least five statutory and administrative issues that are either entirely novel or have not been fully litigated in the RFS context, and each will require explanation of lengthy statutory, regulatory, and administrative history.

*First*, in the 2023-2025 Rule, EPA for the first time exercised its "set" authority under 42 U.S.C. § 7545(*o*)(2)(B)(ii) when setting applicable volumes and resulting percentage standards for all fuels except biomass-based diesel.  For the first time (again, except for

biomass-based diesel), EPA set applicable volumes unencumbered by any default volumes set forth in the statute. Moreover, the criteria applicable to this "set" authority differ from the criteria applicable to prior years' RFS rulemakings, where EPA was largely exercising authority to waive otherwise-applicable volumes. The arguments regarding EPA's interpretation and application of its authority, and the resulting requirements imposed on obligated parties, are therefore necessarily distinct. This issue will require approximately 3,250 words to brief adequately.

*Second*, in addition to the statutory criteria applicable to EPA's "set" authority, the Clean Air Act requires that EPA "determine[]" the applicable volumes "based on a review of the implementation of the program" and an analysis of a host of factors related to the impact of the production and use of renewable fuels. 42 U.S.C. § 7545(*o*)(2)(B)(ii). Certain of the Obligated Party Petitioners will argue that EPA violated these statutory requirements, by failing to account for high RIN prices, RIN market manipulation and the hardship the RFS causes to small refineries in its review and analysis required by the Act. Those Obligated

Party Petitioners anticipate needing approximately 2,250 words to adequately brief this issue.

*Third*, in the 2023-2025 Rule, EPA violated the statutory requirement that it establish applicable volumes "no later than 14 months before the first year for which such applicable volume will apply." 42 U.S.C. § 7545(*o*)(2)(B)(ii).  This issue will require approximately 1,250 words to brief adequately.

*Fourth,* Obligated Party Petitioners will challenge EPA's decision to impose a 250-million-gallon "supplemental" standard on obligated parties in response to this Court's remand regarding the 2016 standards in *Americans for Clean Energy v. EPA*, 864 F.3d 691 (D.C. Cir. 2017). This decision implicates EPA's statutory authority as well as EPA's interpretation of this Court's mandate in *Americans for Clean Energy*. This issue will require approximately 1,250 words to brief adequately.

*Fifth*, at least one Obligated Party Petitioner will challenge EPA's decision to require obligated parties to comply with the "supplemental standard" using current vintage renewable fuel credits—ignoring available credits that represent actual biofuel consumption in 2015 and

2016. This issue will require approximately 1,000 words to brief adequately.

The word limits proposed above are also consistent with prior Court orders involving or related to the RFS program. *See* Order, *Am. for Clean Energy v. EPA*, No. 16-1005 (June 24, 2016), ECF #1621554 (providing obligated party petitioners and biofuels petitioners 14,000 words each and providing EPA 28,000 words in challenges to RFS 2014-16 Rule); Order, *Coffeyville Res. Refining & Marketing, LLC v. EPA*, No. 17-1044 (Dec. 14, 2017), ECF #1708883 (providing obligated party petitioners 13,000 words, petitioner National Biodiesel Board 5,500 words, and EPA 18,500 words in challenges to RFS 2017 Rule); Order, *Am. Fuel & Petro. Mfrs. v. EPA*, No. 17-1258 (July 13, 2018), ECF #1740528 (providing obligated party petitioners 13,000 words, petitioner National Biodiesel Board 6,500 words, environmental petitioners 6,500 words, and EPA 26,000 words in challenges to RFS 2018 Rule); Per Curiam Order, *Am. Fuel & Petro. Mfrs. v. EPA*, No. 19-1124 (Mar. 27, 2020), ECF #1835704 (providing petitioners including AFPM and American Petroleum Institute 12,500 words in challenge to E15 Rule).

Obligated Party Petitioners maintain that the approach this Court took in *RFS Power Coalition, et al. v. EPA*, No. 20-1046 (and consolidated cases) (Oct. 26, 2020), ECF #1875821, a challenge to EPA's 2020 RFS Rule, and *Sinclair Wyoming Refining Co. LLC v. EPA*, No. 22-1210 (and consolidated cases) (Feb. 1, 2023), ECF #1984205, are not appropriately seen as precedent for what the Court ought do here.  First, Obligated Party Petitioners did not agree with a 9,100-word allocation in either case.  *See RFS Power*, No. 20-1046, ECF #1864222; *Sinclair*, No. 22-1210, ECF #1981146.  Second, as noted above, the 2023-2025 Rule differs substantially from both the 2020 Rule and the 2020-2022 Rule.  The petitions under review here raise statutory issues of first impression, including issues on which the Obligated Party Petitioners have nuanced interests and positions—indeed, as with the 2020-2022 RFS litigation, it is possible that Obligated Party Petitioners may not all join all arguments in the brief.  These consolidated petitions are thus more properly viewed as similar to earlier RFS cases where the Court was tasked with evaluating novel arguments that would set the tone for future rulemakings.  In sum, Obligated Party Petitioners' request represents a reasonable approach that is consistent with the briefing

orders issued for the RFS 2014-16, 2017, and 2018 cases (as noted above), and that will allow full briefing of new issues.  And, again, Respondents notably have agreed to Obligated Party Petitioners' proposed word allotments here.

**B.    Statement of Environmental Petitioners in Further Support of 11,000 Words for their Principal Brief.**

Environmental Petitioners Center for Biological Diversity ("CBD") and National Wildlife Federation ("NWF") are requesting a combined total of 11,000 words as permitted under the Federal Rule of Appellate Procedures 32(a)(7)(B) for their opening brief, and 5,500 words for their reply brief.

In this case, Environmental Petitioners raise a combined total of 9 distinct claims, none of which overlap with the issues raised by the other Petitioners.  Environmental Petitioner CBD will also address two additional, distinct administrative records and different defendants than the other parties.  Specifically, and as outlined in CBD's and NWF's Statement of Issues, Environmental Petitioners allege that: (1) EPA violated the Endangered Species Act ("ESA") by failing to complete consultation with the U.S. Fish and Wildlife Service ("FWS") and the National Marine Fisheries Service ("NMFS") before promulgating the

final rule; (2) EPA violated the ESA and the Administrative Procedure Act (APA) in setting the renewable fuel volumes by relying on its ESA 7(d) Determination; (3) FWS and NMFS violated the ESA by failing to complete consultation prior to EPA's issuing its final rule; (4) FWS violated the APA by finding that the EPA's final rule setting renewable fuel volumes would have "no effect" on endangered or threatened species or their critical habitat; (5) NMFS violated the APA by finding that the EPA's final rule setting renewable fuel volumes was "not likely to adversely affect" endangered or threatened species or their critical habitat; (6) EPA violated the APA by failing to properly consider the climate impacts of the production of renewable biomass; (7) EPA violated the APA and the Clean Air Act ("CAA") by ignoring its own models and comparisons showing that the renewable fuel volumes do not achieve the greenhouse gas reductions required by the CAA; (8) EPA violated the APA by failing to consider the environmental and environmental justice harms that will result from the renewable fuel volumes; (9) EPA violated the APA by disregarding its own cost benefit analysis.

Each of these issues requires not just a legal analysis, but also a discussion of three separate administrative records and the facts

documenting the severe climate and environmental harms resulting from the Rule. In addition, Environmental Petitioners are not obligated parties and therefore will have to discuss Article III standing (even though it is already established by precedent).

Thus, considering the number of issues Environmental Petitioners will need to brief, and the factual detail they will need to include to support their claims and to prove standing, Environmental Petitioners respectfully request 11,000 words for their opening brief and 5,500 words for their reply, as this allotment of words is well justified and thus appropriate.

**C.    Statement of Intervenors Clean Fuels Alliance America, Growth Energy, and Renewable Fuels Association.**

Clean Fuels Alliance America, Growth Energy, and Renewable Fuels Association agree with the proposed briefing format above, except they take no position on the issue of how many words to allot to Neste and SABR or whether they may file separate briefs. These intervenors specifically request that there be allowed an intervenor brief responding to the Obligated Party Petitioners' brief and a separate intervenor brief responding to the Environmental Petitioners' Brief, that each of those

intervenor briefs be allotted 70% of the words allotted to the corresponding petitioner brief, and that the deadline to file intervenor briefs be at least three weeks after the deadline for respondents' brief.

Regarding the request that the intervenor briefs receive 70% of the words allotted to the corresponding petitioner briefs, these intervenors add the following explanation. This requested allotment reflects the ratio for intervenor briefs implied by Circuit Rule 32(e)(2)(B)(i). In some prior lawsuits involving EPA's annual RFS standards—e.g., *Growth Energy v. EPA*, No. 19-1023 (regarding the 2019 standards), and *Sinclair* (regarding the 2020-2022 standards)—the Court limited the intervenor briefs to a smaller proportion of the words allotted to the corresponding petitioner briefs. These intervenors—some of which intervened in those cases and indeed in every case involving RFS annual standards—assiduously avoided repetition of facts and legal arguments covered in EPA's briefs, except to the extent necessary to express agreement with EPA's point or to set the table for their own arguments. Instead, consistent with Circuit Rule 28(d)(2), they focused on presenting relevant points not made or adequately elaborated upon in EPA's briefs. *See, e.g.*, *Growth Energy*, ECF ##1825394 & 1825381; *Sinclair*, ECF #2017770.

Yet, they sincerely believe that the low ratio used for those intervenor briefs impaired their ability to advocate for their interests and hindered the Court's ability to adjudicate with a full understanding of the relevant considerations in those cases.

These intervenors want to avoid a similar situation here. As the petitioners' statements above show, the Obligated Party Petitioners intend to raise at least five issues and the Environmental Petitioners intend to raise at least nine issues. Based on those representations (and petitioners' statements of issues), these intervenors anticipate that there will be a broad range of issues necessitating a response. As the trade associations representing entities that produce most of the biofuels that are central to the RFS program, these intervenors can provide a unique perspective beyond EPA's.

These intervenors appreciate the demands that sprawling cases like these may place on the Court's resources, but they believe that using a 70% ratio is necessary and appropriate to enable them to present their many distinct points and to do so in a way that is clear and readily comprehensible to the Court.

### D.    Statement of Intervenor RNG Coalition.

Intervenor RNG Coalition takes no position on the appropriate word count or allocation for any of the petitioners, but agrees that any intervenor brief should be allowed at least 70% of the word count allocated to the corresponding petitioner brief. RNG Coalition further notes that it has not intervened in any prior RFS cases and represents members along the entire renewable natural gas supply chain, which present unique interests than the other intervenors, including the other biofuel intervenors that represent liquid biofuels, as these fuels involve different markets, different supply chains, different operations, and EPA utilized different methodologies in assessing the volumes. RNG Coalition believes sufficient words are needed to ensure its ability to protect those interests, and therefore joins in the request for one joint intervenor brief in response to each petitioner brief that is allowed at least 70% of the word count allocated to the corresponding petitioner brief.

### E.    Statement of Respondents.

Although Respondents disagree that 11,000 words is the "minimum amount necessary" for the opening brief of each group of petitioners, Respondents have agreed to compromise to propose a word limit that could be joined by as many parties as possible.  Because the statute

requires that EPA establish renewable fuel standards annually, and because obligated parties, renewable fuel parties, and environmental group parties each have regularly brought judicial challenges to those rules, there is ample precedent relating to an appropriate allocation of words. *See* Order, *Sinclair Wyoming Refining Co. LLC, et al. v. EPA*, No. 22-1210, ECF No. 1984205 (Feb. 1, 2023) (limiting obligated party petitioners and renewable energy petitioners to 9,100 words each in their opening brief); Order, *RFS Power Coalition v. EPA*, No. 20-1046, ECF No. 1868039 (Oct .26, 2020) (same); *Growth Energy*, No. 19-1023, ECF No. 1802964 (Aug. 20, 2019) (same).  The lower word limit in past years has not impeded this Court's ability to fully understand and adjudicate the issues presented.

Both this Court's precedent and the willingness of the majority of parties to compromise on 11,000 words for each petitioner group's opening brief further demonstrates the extent to which the word limits proposed by SABR Coalition and Neste are out of line with the needs of this litigation and would compromise judicial efficiency.  Not only do SABR Coalition and Neste seek 55 percent more words than any other petitioner group in this litigation, they seek nearly double the number of

words any petition group has been allotted for the past three years. Accordingly, Respondents respectfully request the Court enter the briefing proposal requested by the majority of parties and consider Neste and SABR Coalition a single petitioner group, with each petitioner group's opening brief limited to 11,000 words, and other briefing word limits set proportionally thereafter.

Dated: January 2, 2024

Respectfully submitted,

*/s/ Margaret Coulter*
Margaret Coulter
Jason C. Rylander
CENTER FOR BIOLOGICAL
DIVERSITY
1411 K Street NW, Suite 1300
Washington, DC 20005
(202) 961-4820
mcoulter@biologicaldiversity.org

*Counsel for Center for Biological Diversity*

Todd Kim
Assistant Attorney General
U.S. DEPARTMENT OF
JUSTICE
Environment and Natural
Resources Division

*/s/ Kimere J. Kimball*
Kimere J. Kimball
Alexander M. Purpuro
U.S. DOJ
ENRD/EDS
P.O. Box 7611
Washington, DC 20044
(202) 514-9771 (Purpuro)
alexander.purpuro@usdoj.gov

John H. Martin
Joseph Crusham
Wildlife & Marine Resources
Section
999 18th Street
South Terrace Suite 370
Denver, CO 80202

*Counsel for EPA Respondents*

22

/s/ Jonathan G. Hardin
Jonathan G. Hardin
Alexandra Magill Bromer
PERKINS COIE LLP
700 Thirteenth Street NW
Suite 800
Washington, DC 20005
(202) 654-6297
JHardin@perkinscoie.com

Michael R. Huston*
Karl J. Worsham
PERKINS COIE LLP
2901 N. Central Avenue
Suite 2000
Phoenix, AZ 85102
(602) 351-8000
*Admitted only in Washington, DC

Counsel for American Refining
Group, Inc., Calumet Montana
Refining, LLC, Calumet Shreveport
Refining, LLC, Ergon Refining,
Inc., Ergon-West Virginia, Inc.,
Hunt Refining Co., Par Hawaii
Refining, LLC, Placid Refining
Company LLC, REH Company,
San Joaquin Refining Co., Inc.,
U.S. Oil & Refining Company,
Wyoming Refining Company,
Countrymark Refining and
Logistics, LLC, The San Antonio
Refinery LLC, and Wynnewood
Refining Company, LLC

/s/ Jeffrey R. Holmstead
Jeffrey R. Holmstead
Brittany M. Pemberton
BRACEWELL LLP
2001 M Street NW, Suite 900
Washington, DC 20036
(202) 828-5800
Jeff.Holmstead@bracewell.com

Counsel for REH Company

*/s/ Robert J. Meyers*

Robert J. Meyers
Elizabeth B. Dawson
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500
rmeyers@crowell.com

Richard S. Moskowitz
AMERICAN FUEL &
PETROCHEMICAL
MANUFACTURERS
1800 M Street NW
Suite 900 North
Washington, DC 20036
(202) 457-0480

*Counsel for American Fuel &
Petrochemical Manufacturers*

*/s/ Carrie Apfel*

Carrie Apfel
Earthjustice
1625 Massachusetts Avenue NW
Suite 702
Washington, DC 20001
(202) 797-4310
capfel@earthjustice.org

Peter Lehner
Earthjustice
48 Wall Street
New York, NY 10005
(212) 845-7389

*Counsel for National Wildlife
Federation*

*/s/ Sandra P. Franco*
Sandra P. Franco
FRANCO ENVIRONMENTAL LAW, LLC
600 Pennsylvania Avenue SE #15577
Washington, DC 20003
(202) 256-6115
Sandra@francoenvironmentallaw.com

*Counsel for Coalition for Renewable Natural Gas*

*/s/ Thomas R. Brugato*
Thomas R. Brugato
MaKade C. Claypool
Kevin F. King
Robert A. Long, Jr.
Daniel G. Randolph
COVINGTON & BURLING LLP
One CityCenter
850 10th Street NW
Washington, DC 20001
(202) 662-6000
tbrugato@cov.com

Michele M. Schoeppe
John P. Wagner
AMERICAN PETROLEUM INSTITUTE
200 Massachusetts Avenue NW
Washington, DC 20001
(703) 486-6998

*Counsel for American Petroleum Institute*

*/s/ Douglas A. Hastings*
Douglas A. Hastings
Bryan Michael Killian
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004
(202) 373-6000
douglas.hastings@morganlewis.com

*Counsel for Clean Fuels Alliance America*

25

*/s/ David M. Lehn*
David M. Lehn
BOIES SCHILLER
FLEXNER LLP
1401 New York Avenue NW
Suite 1100
Washington, DC 20005
(202) 237-2727
dlehn@bsfllp.com

Ethan G. Shenkman
ARNOLD & PORTER KAYE
SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
(202) 942-5000
ethan.shenkman@arnoldporter.com

*Counsel for Growth Energy*

*/s/ Matthew W. Morrison*
Matthew W. Morrison
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
(202) 663-8000
matthew.morrison
@pillsburylaw.com

*Counsel for Renewable Fuels
Association*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing filing complies with the word limit of Fed. R. App. P. 27(d)(2), because it contains 3,866 words, excluding the parts of the filing exempted by Fed. R. App. P. 32(f). The filing complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (a)(6), because it was prepared in a proportionately spaced typeface using Microsoft Word in Century Schoolbook fourteen-point font.

Dated: January 2, 2024

*/s/ Kimere J. Kimball*
Kimere J. Kimball
*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2024, I electronically filed the foregoing Joint Proposal with the Clerk of the Court for the United States Court of Appeals for the District of Columbia using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/  Kimere J. Kimball*
Kimere J. Kimball
Counsel for Respondents