NOT YET SCHEDULED FOR ORAL ARGUMENT

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>*Petitioner,*<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY, ET AL.,<br><br>*Respondents*. | No. 23-1177 (and<br>consolidated cases) |

**STATEMENT OF SUSTAINABLE ADVANCED BIOFUEL REFINERS ON BRIEFING SCHEDULE AND PROPOSAL**

In response to this Court's December 1, 2023 Order (Doc. #2029669), Petitioner Sustainable Advanced Biofuel Refiners Coalition ("SABR Coalition") submits this separate statement on the briefing schedule and proposal. SABR Coalition acknowledges that this Court's order "strongly urged [the parties] to submit a joint proposal" and sought to work with the other parties until January 2, 2024. When the parties could not reach agreement on a joint submission, SABR Coalition felt compelled to submit this separate submittal to protect the interests of its members.

This case involves several, distinct challenges to a final rule issued by the U.S. Environmental Protection Agency ("EPA"), entitled "Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes," published at 88 Fed. Reg. 44,468 (July 12, 2023) (referred to herein as "RFS Set Rule"). The RFS Set Rule sets the volumes and the standards for compliance years 2023, 2024, and 2025 under the Renewable Fuel Standard ("RFS") program. The RFS Set Rule also included, for the first time, EPA's view on implementation of the volume requirements under 42 U.S.C. § 7545(o)(2)(B)(ii) (hereinafter referred to as "Set"), as well as numerous, independent amendments to EPA's RFS regulations.

Because it is not aligned with any other Petitioner,[1] SABR Coalition, which is a trade association whose members are stakeholders that have invested in building out America's first advanced biofuel (biodiesel), respectfully requests a separate 10,000-word brief. As outlined in its Statement of Issues (Doc. #2021537), this brief would address the lawfulness of numerous actions by EPA in the RFS Set Rule, including EPA's implementation of the biomass-based diesel and advanced biofuel programs for compliance years 2023 to 2025 under Set; EPA's final conversion

---

[1] As explained further below, on issues SABR Coalition is challenging, which relate to EPA's handling of renewable diesel, Petitioners American Fuel & Petrochemical Manufacturers ("AFPM"), the small refineries coalition, and Neste all submitted comments *in opposition* to SABR Coalition's position. No one disputes that SABR Coalition are not aligned with Petitioners Center for Biological Diversity ("CBD") or National Wildlife Federation ("NWF") (collectively referred to as the "Environmental Petitioners.").

factor of 1.6 for determining the renewable volume obligations for biomass-based diesel; EPA's failure to revise the equivalence values for renewable diesel and its co-products; EPA's inclusion of an expansive definition of "biomass-based diesel" for purposes of Set; and EPA's inclusion of jet fuel (also referred to as sustainable aviation fuel) in the biomass-based diesel category for purposes of Set. For each challenged EPA action, SABR Coalition is raising several substantive challenges as to whether EPA's actions are contrary to law, arbitrary, or otherwise an abuse of discretion. SABR Coalition also plans to raise procedural violations of the notice-and-comment rulemaking requirements. Each of these challenges is before this Court for the first time. Because its issues are distinct, have their own regulatory and statutory history, and involve several substantive and procedural claims, SABR Coalition believes that at least 10,000 words are necessary to effectively represent the interests of its members. SABR Coalition outlines its position on briefing and support for its request below.

I.  **SABR Coalition's Position on the Petitioner "Groups."**

SABR Coalition represents stakeholders in the entire biodiesel production and supply chain from feedstock production to fuel retailers, not just biodiesel producers. Its interests are unique from the other petitioners, and, in this proceeding, each of the other petitioners have taken positions that are in opposition to those taken by

3

SABR Coalition or to its members interests.[2] None of SABR Coalition's challenges overlap with any of the other petitioners' challenges. As such, a separate brief is required.

Based on comments to EPA, SABR Coalition believes the Environmental Petitioners' brief will target feedstocks used by biodiesel producers (*e.g.*, soybean oil). *See* CBD Comments, EPA-HQ-OAR-2021-0427-0708; NWF Comments, EPA-HQ-OAR-2021-0427-0687. Claims of environmental harm due to crop-based biofuels is contrary to SABR Coalition's arguments of *biodiesel's environmental benefits*, including environmental justice benefits, and the potential relief that will be requested by Environmental Petitioners will harm its members. None of the other parties dispute that SABR Coalition is not aligned with the "Environmental Petitioners."

Based on the issues they now claim to be raising,[3] the Obligated Party Petitioners' interests are opposite to SABR Coalition's, as they seek to reduce the volumes set by EPA that SABR Coalition supported (e.g., supplemental standard)

---

[2] *See* definition of aligned, https://dictionary.cambridge.org/dictionary/english/aligned ("supporting or agreeing with another person, organization, or view").

[3] *Compare with* REH Company Nonbinding Statement of Issues (Doc. #2021494); AFPM Nonbinding Statement of Issues (Doc. #2021587); American Refining Group et al. (collectively referred to as "Small Refineries Coalition") Nonbinding Statement of Issues (Doc. #2018547). These Petitioners are referred to collectively as the "Obligated Party Petitioners."

4

or asked to be higher (e.g., advanced biofuel volume). Also, Petitioner AFPM has intervened against SABR Coalition, opposing SABR Coalition's positions here in its comments to EPA regarding the implementation of the biomass-based diesel category and the treatment of renewable diesel under the program. *See* AFPM Comments, EPA-HQ-OAR-2021-0427-0812 at 10, 27-28; *see also* Small Refineries Coalition Comments, EPA-HQ-OAR-2021-0427-0811 at 1 (endorsing AFPM's comments). None of the other parties dispute that SABR Coalition is not aligned with the Obligated Party Petitioners.

However, EPA, the Obligated Party Petitioners, and the Environmental Petitioners seek to lump SABR Coalition with Petitioner Neste as "sufficiently aligned" to be in one so-called "Renewable Energy Petitioners" group.[4] But, here SABR Coalition believes, due to advantageous (and erroneous) treatment under the RFS by EPA, renewable diesel is displacing biodiesel rather than growing the volumes as Congress intended, putting the biodiesel industry at severe risk. To level the playing field, SABR Coalition is arguing for a change in EPA's treatment of both renewable diesel and sustainable aviation fuel under the RFS, which are the fuels that Neste supplies to—and SABR Coalition's members compete with in—the transportation fuel market and, more specifically, the biomass-based diesel market. Not mere differences of opinion or strategy, Neste's comments presented positions

---

[4] "Renewable Energy Petitioners" is not defined or explained.

5

that are opposite to SABR Coalition's positions on issues relevant to its challenges. *See, e.g.*, Neste Comments, EPA-HQ-OAR-2021-0427-0714 at 16-17 (taking contrary position as SABR Coalition on renewable diesel equivalence value reflected in definition of "produced from renewable biomass" and appropriate conversion factor used to determine required number of biomass-based diesel RINs); *cf.* AFPM Comments, EPA-HQ-OAR-2021-0427-0812 at 27-28 (opposing proposed provisions related to "produced from renewable biomass" definition). Thus, with respect to the issues that SABR Coalition raises in this case, Neste and SABR Coalition are not aligned and otherwise would be entitled, under the Federal Rules, to 26,000 total words. Forcing these adverse parties to share 11,000 total words based on some undefined and unexplained "Renewable Energy Petitioners" group is simply unsupportable and unreasonable.

In their explanation for their proposal, Obligated Party Petitioners, Environmental Petitioners, and Respondents do not dispute that Neste submitted comments in opposition to SABR Coalition's positions at issue in this case. Rather, they reference this Court's Handbook of Practice and Internal Procedure (at page 38), which states, in full:

> Parties with common interests in consolidated or joint appeals must join in a single brief where feasible. The Court has admonished counsel that it looks with extreme disfavor on the filing of duplicative briefs in consolidated cases. To avoid repetitious arguments, a party may adopt

6

>or incorporate by reference all or any part of the brief of another.

None of the other parties have identified any "common interests" between Neste and SABR Coalition. Nor do they assert any risk of duplicative briefs between these two Petitioners. Nor can they.

At best the other parties state that SABR Coalition represents the biodiesel industry while Neste is a renewable diesel supplier. Where SABR Coalition asserts that EPA's actions in the final RFS Set Rule are displacing biodiesel in favor of renewable diesel (rather than petroleum diesel),[5] this does not establish any "common interests" *in these consolidated cases*. Indeed, SABR Coalition is the only Petitioner that is seeking to protect the biodiesel industry's continued participation in the RFS program itself (not just to reduce compliance costs as other petitioners). A mere reference to renewable fuels production cannot be sufficient to explain how parties are "sufficiently aligned" much less how they have "common interests." For

---

[5] EPA and other parties have acknowledged this displacement, although there is disagreement as to extent of the displacement and the cause. 88 Fed. Reg. at 44,488 ("We project slight decreases in the volume of biodiesel used in the U.S. as new renewable diesel producers are able to out-compete some existing biodiesel producers for limited feedstocks."); AFPM Comments, EPA-HQ-OAR-2021-0427-0812 at 11 ("Independent EIA analysts project that renewable diesel production projects announced and currently under construction are likely to increase production to as much as 321 thousand barrels per day by 2025. This volume estimate does not consider, as EPA notes in the preamble, that some of the increases in renewable diesel production are likely to come at the expense of reduced FAME biodiesel production.").

7

example, petroleum refiners, including those represented in this case, also have renewable diesel production facilities,[6] yet no one disputes that SABR Coalition is not aligned with the Obligated Party Petitioners. Even if the Court agrees separate briefs between Neste and SABR Coalition are appropriate, the problem remains that there is simply no rationale provided for why Neste and SABR Coalition should be limited to 11,000 total words between these two essentially adverse parties.

Instead, the other parties cite prior cases involving challenges under the RFS, although they provide no valid explanation as to why these cases are similar to the instant case. These cases involved unrelated parties to SABR Coalition, and, importantly, they also involved overlapping issues among the undisputed *aligned* biofuel groups. For example, in *Growth Energy v. EPA*, No. 19-1023, and *RFS Power v. EPA*, No. 20-1046, there was no assertion by any biofuel petitioner that their interests were in opposition to each other. *Growth Energy v. EPA*, No. 19-1023, Doc. #1795962 at 8-10 (filed July 5, 2019); *RFS Power Coalition v. EPA*, No. 20-1046, Doc. #1864222 at 14-18 (filed Sept. 30, 2020).[7]

---

[6] *See, e.g.*, Todd Neeley, *Ethanol Mergers, Acquisitions Rebound in 2021; Renewable Diesel Construction Booms*, Progressive Farmer, Feb. 28, 2022, https://www.dtnpf.com/agriculture/web/ag/news/business-inputs/article/2022/02/28/ethanol-mergers-acquisitions-rebound.

[7] Unlike SABR Coalition's challenges, *Growth Energy* and *RFS Power Coalition* also involved similar arguments raised in prior cases. This is also unlike other petitioners in this case. Obligated parties, for example, have previously challenged EPA's supplemental standard (for 2022), treatment of small refinery exemptions with respect to the volume requirements, failure to meet the statutory deadlines

8

Moreover, unlike prior cases involving RFS issues cited by others, this is not the case where one side seeks to reduce the volumes (e.g., obligated parties) and the other side seeks to increase the volumes (e.g., renewable fuel producers). Even if such were the case, this does not support limiting Neste and SABR Coalition to a total of 11,000 words. For example, AFPM's expressed interest in intervening related to comments that "EPA should further adjust upward its projections for renewable fuel." AFPM Mot. to Intervene at 6 (Doc. #2021091). NWF's comments (EPA-HQ-OAR-2021-0427-0687 at 7) also appear to support reducing the volume requirements. Under the Obligated Party Petitioners, Environmental Petitioners, and Respondents' proposal, potentially 22,000 total words would be provided to petitioners in support of lower volumes compared to only 11,000 total words for both SABR Coalition and Neste (which are addressing separate and distinct implementation and compliance issues). That is not parity.

The RFS Set Rule included several distinct EPA actions that have different implications for different biofuel producers and where different parties took different (including opposite) positions because of those implications. There is no general rule (nor should there be) that, in any case involving the RFS program, any and all parties that may represent renewable fuel producers are "sufficiently aligned" to limit their

---

under the RFS (on several occasions), and routinely challenge EPA's volume requirements, raising similar arguments albeit in different contexts.

9

ability to protect their members' interests. Indeed, it should be noted that AFPM's comments (EPA-HQ-OAR-2021-0427-0812 at 27) supported streamlining the separated food waste requirements being challenged by Neste. This evidences a distinction in parties' "alignment" regarding the issues being raised here, illustrating that any petitioner "grouping" that may have been appropriate (or agreed to) in other cases is simply not applicable here.

In addition, there is no risk of duplicative briefing. Unlike prior RFS cases, where there may have been only one biofuel petitioner or similar issues being raised by all the biofuel-related petitioners, the issues that Neste is raising are unrelated to, and do not overlap with, those being raised by SABR Coalition. Neste's issues relate to a distinct implementation issue regarding the requirements EPA has imposed on users of separated food waste as a feedstock that is "not part of EPA's analysis for the volume requirements and percentage standards for any specific year," 88 Fed. Reg. at 44,479, but merely placed in the same rulemaking. EPA also found that "each of the regulatory amendments in Sections IX and X is severable from the other regulatory amendments because they all function independently of one another."[8] *Id.* These distinct issues require different discussions of regulatory history and other

---

[8] The challenged conversion factor and the discussion of equivalence values also challenged by SABR Coalition were included in these separate discussions, not with the discussions of EPA's set authority or volume determinations.

10

background information necessary for the Court to fully understand the issues being raised and address different parts of the administrative record.

Despite the asserted agreement by the other parties in this case (and prior cases), nothing requires equivalent words among artificially created "groups." Unduly limiting the word count based on an unfair (and insufficiently supported) "grouping" of petitioners would prejudice SABR Coalition and its members. For these reasons, SABR Coalition opposes the petitioner groupings in the proposal from the other parties and the proposal to limit SABR Coalition and Neste to only 11,000 total words. As explained further below, it respectfully requests a separate 10,000-word brief.

**II.    SABR Coalition's Request for at Least 10,000 Words.**

Although requesting a separate brief, SABR Coalition is not requesting the full 13,000 words typically allowed a petitioner brief under the Federal Rules. Rather, in an effort to reduce burdens on this Court, SABR Coalition respectfully requests at least 10,000 words.

As noted above, none of the issues raised by SABR Coalition have previously been before this Court, and SABR Coalition will be required to explain the unique statutory and/or regulatory backgrounds regarding each of the issues raised. Each issue raised also includes different substantive and procedural challenges. Further, based on record statements by EPA, AFPM, and American Petroleum Institute,

11

SABR Coalition anticipates respondents or respondent-intervenors will raise questions regarding the Court's authority to address certain of those issues, which are disputed and must be addressed.

The following is an estimated word allocation for the issues to be raised by SABR Coalition.

(1) EPA's implementation of the biomass-based diesel program under Set (Estimated 2,000 words): This issue includes substantive challenges related to the scope of EPA's authority under "Set" (versus pre-2023 compliance years) and related to whether EPA acted contrary to law or arbitrarily in rendering the biomass-based diesel program meaningless or implementing the volume requirements in a way that is inconsistent with statutory provisions and the goals of Congress.

(2) EPA's invalid expansive definition of biomass-based diesel (i.e., biodiesel) under Set (Estimated 2,500 words): This issue involves challenges as to whether EPA's "biomass-based diesel" definition is consistent with the statute and whether EPA acted arbitrarily or otherwise abused its discretion in failing to acknowledge the adverse implications of its definition on biodiesel in light of Congressional intent to support biodiesel production.

(3) EPA's improper inclusion of "jet fuel" in the biomass-based diesel program under Set (Estimated 2,000 words): This issue includes substantive challenges as to whether EPA's continued inclusion of sustainable aviation fuel as

"biomass-based diesel" under Set is consistent with the statute and whether EPA acted arbitrarily or otherwise abused its discretion in failing to acknowledge the adverse implications of such inclusion on biodiesel in light of Congressional intent to support biodiesel production.

(4) EPA's conversion factor for determining required biomass-based diesel RINs based on an invalid equivalence value for renewable diesel (Estimated 1,000 words): This issue includes substantive challenges as to whether EPA's reliance on an acknowledged improper equivalence value to determine biomass-based diesel RINs is consistent with the statute or otherwise was arbitrary.

(5) EPA's invalid equivalence value for renewable diesel (Estimated 2,000 words): This issue includes substantive challenges to whether EPA's adherence to equivalence values for renewable diesel fuels it acknowledged allow for violations of the statute was contrary to law, arbitrary, or otherwise an abuse of discretion.

SABR Coalition is also raising several procedural violations of the Clean Air Act's notice and comment requirements, which it estimates will require at least an additional 500 words.

With the 11,000 words requested by the Obligated Party Petitioners and the Environmental Petitioners under their agreement with Respondents and the 7,000 words requested by Neste, SABR Coalition's request would result in 39,000 total words—the total number of words that would be allowed even under the other parties

proposed "groupings" under the Federal Rules if Neste and SABR Coalition were aligned, which they are not. Allowing 6,000 more words than what Respondents would agree to (with little justification) is a reasonable request in light of the number of distinct issues being raised (for the first time), the prejudice to SABR's members if forced to share words with an adverse party, and the other parties' agreement that 11,000 words per aligned petitioner group is warranted here (which would total 44,000 words).

SABR Coalition acknowledges that in prior cases involving the RFS, this Court has reduced the requested word counts, even when there has been agreement among the parties. While we believe these cases are distinct from the present one, these prior determinations still do not require an equal number of words be shared among each "group." This is particularly true in light of the likely repetition of prior arguments by the Obligated Party and Environmental Petitioners, the disparity of total words supporting a reduction in the volume requirements, and the distinct EPA actions that it chose to put into one Federal Register notice. As such, SABR Coalition respectfully requests that any potential reduction in total words for the case should not penalize SABR Coalition's members.

### III. SABR Coalition's Position on Briefing Schedule.

SABR Coalition does not present a different proposal on briefing schedule than proposed by the other parties. Its only request regarding schedule was to start

briefing in this case no earlier than March 22, 2024 due to SABR Coalition's counsel's potential commitments in *Coalition for Renewable Natural Gas v. EPA*, Case No. 23-1248. Nonetheless, it also agrees with the request for 30 days from Respondent-Intervenor briefs to file petitioners' reply briefs and sufficient time to file the final briefs from when the joint appendix is due.

        Respectfully submitted,

        /s/ Sandra P. Franco
        Sandra P. Franco
        Franco Environmental Law, LLC
        600 Pennsylvania Avenue, SE
        Unit 15577
        Washington, DC 20003
        T 202 256-6115
        sandra@francoenvironmentallaw.com

        Jerome C. Muys, Jr.
        Muys & Associates, LLC
        910 17th Street, NW, Suite 800
        Washington, DC 20006
        T 301-785-0602
        jmuys@muyslaw.com

        *Counsel for Sustainable Advanced Biofuel Refiners Coalition*

Dated:  January 2, 2024

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing filing complies with the word limit of Fed. R. App. P. 27(d)(2) (as applicable), because it contains 3,155 words, excluding the parts of the filing exempted by Fed. R. App. P. 32(f). The filing complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and (a)(6), because it was prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman fourteen-point font.

                                                             /s/ Sandra P. Franco
                                                             Sandra P. Franco

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>*Petitioner,*<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL.,<br><br>*Respondents.* | No. 23-1177 (and consolidated cases) |

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of January, 2024, I caused the Statement of Sustainable Advanced Biofuel Refiners on Briefing Schedule and Proposal to be electronically filed with the Clerk of the U.S. Court of Appeals for the D.C. Circuit by using the Court's appellate CM/ECF system and that service will be accomplished by the appellate CM/ECF system.

                                              /s/ Sandra P. Franco
                                              Sandra P. Franco