ORAL ARGUMENT NOT YET SCHEDULED
CASE NO. 23-1177 (and consolidated cases)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY,

*Petitioner,*

v.

ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents.*

ON PETITION FOR REVIEW FROM THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY

**INITIAL OPENING BRIEF OF PETITIONER
SUSTAINABLE ADVANCED BIOFUEL REFINERS COALITION**

Sandra P. Franco
Franco Environmental Law LLC
600 Pennsylvania Ave., SE
Unit 15577
Washington, DC 20003
T 202-256-6115
sandra@francoenvironmentallaw.com

Jerome C. Muys, Jr.
Muys & Associates, LLC
910 17th Street, NW, Suite 800
Washington, DC 20006
T 301-785-0602
jmuys@muyslaw.com

*Counsel for Sustainable Advanced
Biofuel Refiners Coalition*

**Dated:  March 22, 2024**

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), Petitioner Sustainable Advanced Biofuel Refiners Coalition provides the following list of parties to this case, rulings under review, and related cases:

1.      Parties and Amici: This is a matter on petition for review of an agency action. There was no action in the district court, and so there were no parties in the district court. The parties in this Court on these consolidated cases are:

**Petitioners**: Center for Biological Diversity, No. 23-1177;

Neste US, Inc., No. 23-1240;

American Refining Group, Inc.; Calumet Montana Refining, LLC; Calumet Shreveport Refining, LLC; Ergon Refining, Inc.; Ergon-West Virginia, Inc.; Hunt Refining Company; Par Hawaii Refining, LLC; Placid Refining Company LLC; REH Company (also No. 23-1244); San Joaquin Refining Co., Inc.; U.S. Oil & Refining Company; Wyoming Refining Company; Countrymark Refining and Logistics, LLC; The San Antonio Refinery LLC; and Wynnewood Refining Company, LLC, No. 23-1243;

Sustainable Advanced Biofuel Refiners Coalition, No. 23-1246;

American Fuel & Petrochemical Manufacturers, No. 23-1247;

National Wildlife Federation, No. 23-1249.

**Respondents**: U.S. Environmental Protection Agency; Michael S. Regan, Administrator, U.S. Environmental Protection Agency; U.S. Fish & Wildlife Service; National Marine Fisheries Service.

**Respondent-Intervenors**:     American     Fuel     &     Petrochemicals     Manufacturers; American Petroleum Institute; Clean Fuels Alliance America; Coalition for Renewable Natural Gas; Growth Energy; and Renewable Fuels Association.

2.     Rulings Under Review

This case challenges final agency action promulgated by the U.S. Environmental Protection Agency and published in the Federal Register Notice entitled "Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes," 88 Fed. Reg. 44,468 (July 12, 2023).

3.     Related Cases

On October 5, 2023, Clean Fuels Alliance America filed a stipulation to voluntarily dismiss their petition in Case No. 23-1245, Doc. #2020671. The voluntary dismissal was granted on October 12, 2023, Doc. #2021498, and the case was removed from consolidation.

Pursuant to this Court's order dated November 27, 2023, Doc. #2028670, *Coalition for Renewable Natural Gas v. EPA*, Case No. 23-1248, was severed from these consolidated cases. That case involves challenges to the "Biogas Regulatory Reforms" that were also included in the same Federal Register Notice entitled "Renewable Fuel Standard (RFS) Program: Standards for 2023-2025 and Other Changes," 88 Fed. Reg. 44,468 (July 12, 2023).

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, Petitioner Sustainable Advanced Biofuel Refiners Coalition ("SABR") makes the following disclosure:

SABR has no parent companies, and no publicly held company has a 10% or greater ownership interest. It has not issued shares or debt securities to the public.

SABR is an association of stakeholders that have invested in building out America's first advanced biofuel—biodiesel. It started as the Small Advanced Biofuel Refiners Coalition and changed its name to Sustainable Advanced Biofuel Refiners Coalition, as its membership grew to include stakeholders from every link in the value chain from feedstock growers to biodiesel producers, distributors, retailers, and consumers, as well as infrastructure, products, and services suppliers. SABR advocates to support the interests of its members, including proper implementation of the Renewable Fuel Standard program. It is a "trade association" as defined in Circuit Rule 26.1(b).

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........C-1

RULE 26.1 CORPORATE DISCLOSURE STATEMENT................................C-3

TABLE OF AUTHORITIES .................................................................... iii

GLOSSARY OF ACRONYMS AND ABBREVIATIONS...................................vi

JURISDICTIONAL STATEMENT ....................................................................1

STATEMENT OF ISSUES ...............................................................................1

STATUTES AND REGULATIONS....................................................................2

STATEMENT OF THE CASE............................................................................2

STATEMENT OF FACTS ................................................................................3

      A.    Biodiesel Under the RFS....................................................................3

      B.    EPA's Proposal..................................................................................4

      C.    Set Rule ............................................................................................7

SUMMARY OF ARGUMENT ..........................................................................8

STANDING .....................................................................................................8

ARGUMENT ...................................................................................................9

    I.    STANDARD OF REVIEW .......................................................................9

    II.   EPA'S IMPLEMENTATION OF THE BIOMASS-BASED DIESEL AND ADVANCED BIOFUEL PROGRAMS UNDER SET IS UNLAWFUL AND ARBITRARY ........................................................................................9

        A.    Biomass-based Diesel is Limited to Advanced Biodiesel .......10

## TABLE OF CONTENTS (cont.)

Page

B.  Merely Allowing Renewable Diesel to Displace Biodiesel Renders EPA's Implementation of the Volume Requirements Arbitrary and an Abuse of Discretion ..............14

1.  EPA's implementation of the biomass-based diesel program is inconsistent with the statute and its own policies ...........................................................................14

2.  Like "implied" conventional biofuel requirements, the biomass-based diesel volume requirements should ensure a continued role for biodiesel ................18

C.  EPA Impermissibly Ignored Alternatives to Implementing the Biomass-based Diesel Program..................19

III.  AT A MINIMUM, EPA WAS REQUIRED TO REASSESS THE INCLUSION OF RENEWABLE JET FUEL IN THE BIOMASS-BASED DIESEL PROGRAM..................................................................21

IV.  THE EQUIVALENCE VALUE FOR RENEWABLE DIESEL IS UNLAWFUL, RENDERING THE CONVERSION FACTOR FOR BIOMASS-BASED DIESEL ARBITRARY ..................................24

CONCLUSION.....................................................................27

CERTIFICATION OF COMPLIANCE ...............................29

CERTIFICATE OF SERVICE ...........................................30

ADDENDUM

Declaration

Statutes and Regulations

ii

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Alon Refining Krotz Springs, Inc. v. EPA*,
   936 F.3d 628 (D.C. Cir. 2019)...................................................................8, 9

*Am. Pub. Gas Ass'n v. DOE*,
   72 F.4th 1324 (D.C. Cir. 2023)......................................................................27

*Ams. for Clean Energy v. EPA*,
   864 F.3d 691 (D.C. Cir. 2017).....................................................................2, 12

*Appalachian Power Co. v. EPA*,
   135 F.3d 791 (D.C. Cir. 1998)........................................................................20

*Brennan v. Dickson*,
   45 F.4th 48 (D.C. Cir. 2022).........................................................................19

*Chesapeake Climate Action Network v. EPA*,
   952 F.3d 310 (D.C. Cir. 2020)..................................................................19, 20

*Del. Dep't of Nat. Res. & Envtl. Control v. EPA*,
   895 F.3d 90 (D.C. Cir. 2018).........................................................................13

*Great Lakes Commun. Corp. v. FCC*,
   3 F.4th 470 (D.C. Cir. 2021).........................................................................19

*Morrison-Knudsen Constr. Co. v. Director*,
   461 U.S. 624 (1983)....................................................................................11

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,
   463 U.S. 29 (1983).......................................................................................9

*Nat'l Biodiesel Bd. v. EPA*,
   843 F.3d 1010 (D.C. Cir. 2016).......................................................................8

*Nat'l Petrochemical & Refiners Ass'n v. EPA*,
   630 F.3d 145 (D.C. Cir. 2010)........................................................................13

*Ohio v. EPA*,
   838 F.2d 1325 (D.C. Cir. 1988)......................................................................23

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*,
  494 F.3d 188 (D.C. Cir. 2007) ............................................................................20

*Sierra Club v. EPA*,
  551 F.3d 1019 (D.C. Cir. 2008) .........................................................................23

*United States v. Tohono O'odham Nation*,
  563 U.S. 307 (2011) ............................................................................................13

## FEDERAL STATUTES AND LEGISLATIVE MATERIALS

42 U.S.C. §7545(o)(1)(C) (2005) ...........................................................................3

42 U.S.C. §7545(o)(1)(C) ........................................................................................3

42 U.S.C. §7545(o)(1)(D) ...........................................................................3, 11, 15

42 U.S.C. §7545(o)(1)(J) ........................................................................................26

42 U.S.C. §7545(o)(2)(A) .................................................................................13, 15

42 U.S.C. §7545(o)(2)(B) ...................................... 4, 9, 10, 13, 17, 19, 23

42 U.S.C. §7545(o)(3) .......................................................................................5, 21

42 U.S.C. §7545(o)(3)(B) ......................................................................................21

42 U.S.C. §7545(o)(5)(A) ......................................................................................16

42 U.S.C. §7545(u) .................................................................................................11

42 U.S.C. §7571 ......................................................................................................22

42 U.S.C. §7607(b)(1) ..............................................................................................1

42 U.S.C. §7607(d)(6) ............................................................................................19

42 U.S.C. §7607(d)(9) ..............................................................................................9

42 U.S.C. §13220 ....................................................................................................22

42 U.S.C. §13220(a) ...............................................................................................11

iv

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

42 U.S.C. §13220(f)..................................................................3, 11, 22, 23

Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594 (2005).....3, 4, 11, 12

Energy Independence and Security Act of 2007, Pub. L. No. 110-140,
121 Stat. 1492 (2007)..................................................................2, 3, 11

H.R. Rep. No. 105-727 (1998).................................................................11

S. Rep. No. 110-65 (2007)....................................................................2, 15

153 Cong. Rec. S8022 (June 20, 2007) ...................................................15

153 Cong. Rec. H14260 (Dec. 6, 2007)....................................................4

### ADMINISTRATIVE MATERIALS

40 C.F.R. §79.32 ..................................................................................22

40 C.F.R. §79.33 ..................................................................................22

40 C.F.R. §80.2 .....................................................................................2

40 C.F.R. §80.1415(b) .......................................................................24, 25

75 Fed. Reg. 14,670 (Mar. 26, 2010)..................................................6, 24

77 Fed. Reg. 59,458 (Sept. 27, 2012) ....................................................17

78 Fed. Reg. 14,190 (Mar. 5, 2013)........................................................23

84 Fed. Reg. 10,584 (Mar. 21, 2019)......................................................17

87 Fed. Reg. 80,582 (Dec. 30, 2022)............. 5, 6, 10, 16, 17, 20, 23, 24, 25, 26, 27

88 Fed. Reg. 44,468 (July 12, 2023)................... 1, 2, 4, 7, 9, 10, 12, 14, 18, 21, 25

Energy Information Administration,
https://www.eia.gov/biofuels/renewable/capacity/ (last updated
Aug. 7, 2023) ................................................................................26

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

Pursuant to Circuit Rule 28(a)(3), the following is a glossary of acronyms and abbreviations used in this brief:

| | |
|---|---|
| ASTM | ASTM International |
| B__ | Biodiesel fuel blends (e.g., B20 is a fuel that has 20% biodiesel) |
| EPA | Respondent U.S. Environmental Protection Agency |
| SABR | Petitioner Sustainable Advanced Biofuel Refiners Coalition |
| RFS | Renewable Fuel Standard |
| RIN | Renewable Identification Number |

## JURISDICTIONAL STATEMENT

Sustainable Advanced Biofuel Refiners Coalition ("SABR") timely filed this Petition under the Clean Air Act, 42 U.S.C. §7607(b)(1), challenging actions by the U.S. Environmental Protection Agency ("EPA") in 88 Fed. Reg. 44,468 (July 12, 2023) ("Set Rule"). *See also, infra*, n.10.

## STATEMENT OF ISSUES[1]

1)      Whether EPA's implementation of the Renewable Fuel Standard's ("RFS") biomass-based diesel and advanced biofuel volume requirements in the Set Rule was unlawful and arbitrary.

2)      Whether EPA's inclusion of renewable diesel and renewable jet fuel (also called sustainable aviation fuel) in the biomass-based diesel program in the Set Rule was unlawful, arbitrary, or an abuse of discretion.

3)      Whether EPA improperly failed to consider and respond to proposed alternatives to support an ongoing role for biodiesel under the RFS.

4)      Whether renewable diesel equivalence values that allow credit for fossil fuel use are unlawful and arbitrary.

---

[1] Despite having divergent interests, EPA arbitrarily opposed SABR's word request. *See* Doc. #2034097, 2037981, 2038750. Under the word limits, SABR necessarily must truncate its arguments, which should not be deemed as forfeiture of any arguments.

5)      Whether allowing RFS volumes to be met by fossil fuel use through renewable diesel was unlawful and arbitrary.

## STATUTES AND REGULATIONS

Relevant statutes and regulations appear in an addendum.

## STATEMENT OF THE CASE

The RFS is a market forcing policy, which promotes greenhouse gas emissions reductions, rural economies, and energy security by increasing renewable fuel production. *Ams. for Clean Energy v. EPA*, 864 F.3d 691, 705, 710 (D.C. Cir. 2017); S. Rep. No. 110-65, at 2-3 (2007). Meeting these goals, biodiesel—a diesel fuel substitute—is a mono-alkyl ester (e.g., methyl ester) produced through transesterification of lipids found in, e.g., animal fats and vegetable oils with alcohol (e.g., methanol). 88 Fed. Reg. 44,484 (JA__); 40 C.F.R. §80.2. Congress sought to support biodiesel specifically by establishing "biomass-based diesel" requirements under the RFS mandate. Pub. L. No. 110-140, §§201-202(a)(2), 121 Stat. 1492, 1520, 1523 (2007). Where the Set Rule establishes RFS implementation rules post-2022 and current implementation creates an unlevel playing field in the biomass-based diesel market, SABR filed this petition for review of EPA's actions that undermine Congressional intent to promote biodiesel.

## STATEMENT OF FACTS

### A.    Biodiesel Under the RFS

In 2005, then President Bush called on Congress to pass the RFS, recognizing "[b]iodiesel is one of our nation's most promising alternative fuel sources." JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_2-3). In response, Congress established the RFS under the Energy Policy Act of 2005, which required renewable fuel in the gasoline market, but defined "renewable fuel" to include biodiesel. Pub. L. No. 109-58, §1501(a)(2), 119 Stat. 594, 1068 (2005). Referencing the definition in 42 U.S.C. §13220(f), "biodiesel" was defined as "a diesel fuel substitute produced from nonpetroleum renewable resources that meets the registration requirements for fuels and fuel additives established by [EPA] under section 7545." 42 U.S.C. §7545(o)(1)(C)(ii)(II) (2005).

In 2007, Congress expanded the RFS to require renewable fuel in "transportation fuel" and established "biomass-based diesel" volume requirements. Pub. L. No. 110-140, §§201-202(a), 121 Stat. 1520-1523. Congress defined "biomass-based diesel" as "biodiesel," incorporating the same biodiesel definition as in 2005. 42 U.S.C. §7545(o)(1)(D). Except to be biomass-based diesel, EPA must find that the biodiesel's lifecycle greenhouse gas emissions are at least 50% less than the average lifecycle greenhouse gas emissions of diesel sold or distributed as transportation fuel in 2005. *Id.* §7545(o)(1)(C)-(D). Recognizing biodiesel plants

were growing across the country, Congress "include[d] specific targets for *biodiesel*." 153 Cong. Rec. H14260, H14265-14266 (Dec. 6, 2007) (statement of Rep. Herseth Sandlin) (emphasis added); JA__ (EPA-HQ-OAR-2021-0427-0813_at_3_n.5). Congress knew the difference between biodiesel and renewable diesel, which was not produced in the United States at the time. *Cf.* Pub. L. No. 109-58, §1346, 119 Stat. 1055; JA__ (EPA-HQ-OAR-2021-0427-0813_at_3).

Biodiesel use in the United States grew significantly under the RFS, exceeding 2 billion gallons in 2016. JA__ (EPA-HQ-OAR-2021-0427-1113_at_25); JA__ (EPA-HQ-OAR-2021-0427-0813_cover_letter_at_1). In recent years, however, renewable diesel use has grown, while U.S. biodiesel production has reduced to among its lowest levels under the RFS. JA__ (EPA-HQ-OAR-2021-0427-1113_at_25); JA__ (EPA-HQ-OAR-2021-0427-0813_at_5). Pointing to the "nested" nature of biomass-based diesel within advanced biofuels, EPA found that the advanced biofuel volume requirements have "driven the demand for [biomass-based diesel]." 88 Fed. Reg. 44,546 (JA__). However, biodiesel must compete with renewable diesel and renewable jet fuel under the artificial biomass-based diesel market created by EPA. JA__ (EPA-HQ-OAR-2021-0427-0826_at_3).

## B.    EPA's Proposal

After 2022, EPA must establish the RFS volume requirements under 42 U.S.C. §7545(o)(2)(B)(ii), referred to as "Set." The statute, however, gave EPA

"discretion as to how to implement the volume requirements of the RFS program in years 2023 and beyond." 87 Fed. Reg. 80,582, 80,589 (Dec. 30, 2022) (JA__). EPA proposed to use the same percentage standards it had used previously to implement the volume requirements for renewable fuel, advanced biofuel, cellulosic biofuel, and biomass-based diesel under 42 U.S.C. §7545(o)(3), asking for comment on its proposed implementation and "other options" to the proposed biomass-based diesel standard. 87 Fed. Reg. 80,589 (JA__), 80,626 (JA__). In response, biodiesel stakeholders urged EPA to implement the biomass-based diesel program consistent with the statute and in recognition of the displacement of biodiesel by renewable diesel and renewable jet fuel under EPA's current implementation, providing alternative options that would support *all* fuels. *See, e.g.,* JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_17-26); JA__ (EPA-HQ-OAR-2021-0427-0749_at_14). Others commented on these alternatives. JA__ (EPA-HQ-OAR-2021-0427-0627_at_9); JA__ (EPA-HQ-OAR-2021-0427-0812_at_10).

EPA recognized that renewable diesel was increasingly being used to meet the biomass-based diesel requirements. 87 Fed. Reg. 80,686 (JA__). Compared to biodiesel, renewable diesel has a higher "equivalence value," which determines the number of Renewable Identification Numbers ("RINs") generated per gallon of

renewable fuel.[2] *Id.* EPA then proposed to revise its formula for determining the standard for biomass-based diesel, which included a factor to convert ethanol-equivalent RINs to biomass-based diesel gallons for purposes of determining compliance with the volume requirement, to "more accurately reflect the amount of renewable diesel in the [biomass-based diesel] pool." *Id.* EPA proposed to revise the conversion factor from 1.5 that represented the equivalence value for biodiesel with 1.57 that reflected the increased use of renewable diesel gallons that mostly have a 1.7 equivalence value. *Id.* But the proposed rule also indicated that the renewable diesel equivalence values allowed the generation of RINs for "fossil-derived hydrogen" used in the production process. *Id*. at 80,707 (JA__). Even though a portion of renewable diesel's energy stems from the hydrogen, the equivalence values were based on an assumption that 100% of the renewable diesel "came from the non-hydrogen feedstock."[3] *Id.* This was unlike biodiesel, which had its equivalence value discounted based on use of non-renewable methanol in the production process. JA__-__ (EPA-HQ-OAR-2021-0427-0012_at_2-4).

---

[2] RINs show compliance with RFS volume requirements. The "equivalence value" reflects the fuel's energy compared to ethanol. 75 Fed. Reg. 14,670, 14,709-14,710 (Mar. 26, 2010). RINs represent "ethanol-equivalent" gallons.

[3] EPA did not explain if other equivalence values for renewable diesel and its co-products, including renewable jet fuel, suffer from the same defect.

SABR opposed revisions to the conversion factor and noted that, by EPA's own findings, the equivalence values on which it was based were not consistent with the statute. JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_45-46); JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_6-7). Evidence also was provided showing the equivalence value for renewable diesel was closer to 1.5 than 1.7 when accounting for fossil-based hydrogen. JA__-__ (EPA-HQ-OAR-2021-0427-1147); JA__-__ (EPA-HQ-OAR-2021-0427-1148).

### C.    Set Rule

EPA finalized its proposal to implement the volume requirements under Set using the same four percentage standards as before Set. 88 Fed. Reg. 44,478 (JA__). In response to the proposed alternatives for biomass-based diesel, EPA merely stated that biodiesel and renewable diesel both meet the definition as "diesel fuel substitutes." JA__-__ (EPA-HQ-OAR-2021-0427-1114_at_58-59). While acknowledging it was required to review implementation of the program to date, EPA did not consider the proposed alternatives to implementation further, stating only that it had not proposed them. *Id.*

And, ignoring the proposal's findings regarding renewable diesel's equivalence value, EPA's final rule increased the conversion factor from 1.57, as proposed, to 1.6. 88 Fed. Reg. 44,546-44,547 (JA__-__). EPA confirmed the 1.7 equivalence value for renewable diesel. *Id.* at 44,546 n.312 (JA__). EPA only

7

indicated that it "continue[s] to believe that basing equivalence values on the energy content of the fuel is appropriate." JA__ (EPA-HQ-OAR-2021-0427-1114_at_56).

## SUMMARY OF ARGUMENT

EPA's post-2022 implementation rules for the biomass-based diesel program are counter to Congressional intent where renewable diesel is merely displacing biodiesel rather than fossil fuel. EPA improperly ignored viable alternatives to implementing the volume requirements under Set to support biodiesel, renewable diesel, *and* renewable jet fuel. At a minimum, EPA is impermissibly requiring biodiesel to compete with renewable jet fuel, which is, by definition, not "biomass-based diesel." EPA's rules stemming from unlawful equivalence values for renewable diesel also disadvantage biodiesel compared to renewable diesel in violation of the statute and arbitrarily picking winners and losers.

## STANDING

The RFS volume requirements set the biomass-based diesel market in which SABR members compete, and thereby they are directly impacted by EPA's implementation of the RFS. Jobe Decl., ¶¶9-22. Where SABR advocates on behalf of its members, and participation of individual members is not necessary, it has standing. *See Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 664-65 (D.C. Cir. 2019); *Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1015-1016 (D.C. Cir. 2016).

## ARGUMENT

### I.     STANDARD OF REVIEW

The Clean Air Act requires the Court to determine whether EPA's actions were arbitrary, capricious, an abuse of discretion, in excess of statutory authority, or otherwise not in accordance with law. 42 U.S.C. §7607(d)(9). The arbitrary and capricious standard requires EPA to examine the relevant factors and articulate a satisfactory explanation for its action. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). EPA's exercise of statutory discretion may also be reviewable based on an abuse of that discretion. *Alon Ref. Krotz Springs*, 936 F.3d at 654-655.

### II.    EPA'S IMPLEMENTATION OF THE BIOMASS-BASED DIESEL AND ADVANCED BIOFUEL PROGRAMS UNDER SET IS UNLAWFUL AND ARBITRARY.

After 2022, "the statute directs EPA to determine the applicable volume targets ... based on a review of the implementation of the program for prior years and an analysis of specified factors." 88 Fed. Reg. 44,469 (JA__); 42 U.S.C. §7545(o)(2)(B)(ii). While the biomass-based diesel program had statutory volumes only through 2012, the "nested" nature of biomass-based diesel within the advanced biofuel program constrained those volume determinations. 88 Fed. Reg. 44,516-44,517 (JA__-__). The Set Rule is the first time EPA was required to establish the volumes for renewable fuels, advanced biofuels, and cellulosic biofuels under Set that had statutory volumes through 2022. *Id.* at 44,469 (JA__).

Under 42 U.S.C. §7545(o)(2)(B)(ii), EPA sets the "rules" establishing the volume requirements. "The statute is silent with regard to how applicable volume requirements should be implemented for years after 2022." 87 Fed. Reg. 80,630 (JA__). "Congress provided EPA discretion as to how to implement the volume requirements of the RFS program in years 2023 and beyond." 88 Fed. Reg. 44,478 (JA__). But, EPA was obligated to review implementation of the biomass-based diesel and advanced biofuel programs through 2022 to determine how best to implement the volume requirements after 2022. EPA's decision to implement these requirements for 2023-2025 as it did in prior years was unlawful, arbitrary, and an abuse of discretion. At a minimum, EPA should have considered alternatives that better implemented Congressional intent. EPA's failure to do so was arbitrary.

### A.    Biomass-based Diesel is Limited to Advanced Biodiesel.

For the Set Rule, EPA was required to reassess its implementation of the biomass-based diesel and advanced biofuel programs. 87 Fed. Reg. 80,591 (JA__), 80,621 (JA__), 80,625-80,626 (JA__-__). EPA, however, finalized volume requirements using the same process as it has through compliance year 2022, which allows biodiesel, renewable diesel, and renewable jet fuel to be used to meet the "biomass-based diesel" volume requirements. Based on a review of implementation of the program to date, EPA should have revised its compliance provisions to ensure

10

that only "biodiesel" that qualifies as "biomass-based diesel" is used to meet that requirement. *See, e.g.,* JA__ (EPA-HQ-OAR-2021-0427-0813_at_17).

First, the statute limits "biomass-based diesel" to "biodiesel." 42 U.S.C. §§7545(o)(1)(D), 13220(f). *The* diesel fuel *substitute* being referenced was biodiesel (mono-alkyl esters), not renewable diesel. JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_2-3). The definition in §13220(f) supported credits for B20—the most common *biodiesel* blend—for purposes of that fleet program.[4] 42 U.S.C. §13220(a)(1); H.R. Rep. No. 105-727, at 8-10 (1998). Elsewhere in the 2005 Energy Policy Act, Congress distinguished "biodiesel" from "renewable diesel," which is also produced from lipids but uses a similar production process as petroleum diesel. *Compare* Pub. L. No. 109-58, §1346, 119 Stat. 1055 (adding renewable diesel to tax credit) *with* §757, 119 Stat. 833 (biodiesel engine testing program). Congress also referred to *biodiesel* blends of "B5" and "B20," utilizing the same §13220(f) definition of "biodiesel" in 42 U.S.C. §7545(u). Pub. L. No. 110-140, §247, 121 Stat. 1547-1548. A "word is presumed to have the same meaning in all subsections of the same statute." *Morrison-Knudsen Constr. Co. v. Director*, 461 U.S. 624, 633 (1983) (citation omitted).

---

[4] After its adoption in 2002, reference to ASTM D6751 also has been used to define "biodiesel." JA__ (EPA-HQ-OAR-2021-0427-0813_at_2).

The statutory structure shows Congress plainly limited "biodiesel" to *the* diesel fuel *substitute* available when the statute was enacted—mono-alkyl esters. EPA merely asserted that renewable diesel is also a "diesel fuel substitute." JA__ (EPA-HQ-OAR-2021-0427-1114_at_58). This is incorrect. Renewable diesel must meet ASTM D975, which is the industry standard for diesel fuel. In other words, it is *diesel fuel. See* Pub. L. No. 109-58, §1346(a), 119 Stat. 1055 (defining renewable diesel as "diesel fuel derived from biomass"); JA__ (EPA-HQ-OAR-2021-0427-0230_at_3); *see also* JA__ (EPA-HQ-OAR-2021-0427-0230_at_2) ("[I]t is incorrect and misleading to refer to [renewable diesel] as biodiesel.").[5]

Second, even if renewable diesel could be deemed a "diesel fuel substitute" for purposes of the RFS, nothing prevents EPA from determining that renewable diesel is better handled under the overall advanced biofuel program. Indeed, a review of implementation of the program to date makes clear that the biomass-based diesel program has been moribund. EPA found that "the advanced biofuel standard has driven the use of [biomass-based diesel] in the market." 88 Fed. Reg. 44,516 (JA__). But the volume requirements were intended to be market forcing. *Ams. for Clean Energy*, 864 F.3d at 705, 710. Statutes are construed "'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or

---

[5] Renewable jet fuel is not a "diesel fuel substitute." *See, infra,* §III.

insignificant." *Del. Dep't of Nat. Res. & Envtl. Control v. EPA*, 895 F.3d 90, 99 (D.C. Cir. 2018) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted)); *see also United States v. Tohono O'odham Nation*, 563 U.S. 307, 315 (2011) (statutes should not be rendered "nugatory through construction"). Where EPA has found that advanced biofuels is driving renewable diesel production, the biomass-based diesel program is essentially rendered inoperative or, at best, insignificant. To provide meaning to the biomass-based diesel volumes, EPA should preserve and grow the U.S. biodiesel industry, as Congress intended.

Finally, EPA is required to ensure "at least" the applicable volumes. 42 U.S.C. §7545(o)(2)(A). In other words, these are "minimum volumes." *Nat'l Petrochemical & Refiners Ass'n v. EPA*, 630 F.3d 145, 147 (D.C. Cir. 2010). In requiring a minimum of biomass-based diesel volumes equal to the 2012 volume under "set" (1 billion gallons), 42 U.S.C. §7545(o)(2)(B)(v), the statute illustrates that Congress sought to protect existing biodiesel and the investments that had been made. In 2012, biodiesel alone exceeded the biomass-based diesel volume requirement. JA__ (EPA-HQ-OAR-2021-0427-0813_at_18). Nothing prevents EPA from finding a minimum level of biodiesel is warranted based on the factors it must consider. A review of the implementation of the program indicates that the biomass-based diesel program would better ensure the volumes are met and the goals of the program achieved by requiring a minimum biodiesel volume under the biomass-based diesel program.

13

**B.**    **Merely Allowing Renewable Diesel to Displace Biodiesel Renders EPA's Implementation of the Volume Requirements Arbitrary and an Abuse of Discretion.**

EPA has acknowledged "the long and important history of biodiesel's role in the RFS program, and its contribution to national energy security as well as to local economies." JA__ (EPA-HQ-OAR-2021-0427-0428_attachment_2_at_2). However, it has finalized implementation rules post-2022 that EPA admits "decreases" biodiesel volumes in favor of renewable diesel. 88 Fed. Reg. 44,488 (JA__). With announced expansions of renewable diesel production capacity, biodiesel facilities are at substantial risk of closing. JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_4-5). EPA's failure to account for this in setting the rules under Set is arbitrary and an abuse of discretion.

**1.**    **EPA's implementation of the biomass-based diesel program is inconsistent with the statute and its own policies.**

While EPA may claim the displacement of biodiesel is a result of other market factors, this ignores EPA's role in setting the biomass-based diesel market. While forcing biodiesel to compete with other fuels not contemplated by Congress, EPA nonetheless, set a limited biomass-based diesel volume requirement that disadvantages biodiesel. Failing to ensure an ongoing market for biodiesel under the RFS is counter to the statute and EPA's own policies to promote competition within the transportation fuel market.

14

First, Congress wanted to protect existing biofuel production, while also diversifying available biofuels *nationwide*. S. Rep. No. 110-65, at 2-3. This is evidenced by the prohibition on geographic restrictions on where biofuels are used. 42 U.S.C. §7545(o)(2)(A)(iii)(II)(aa). But, unlike biodiesel,[6] renewable diesel plants are limited in number and location and mostly sell into the California market. JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_10-13); JA__ (EPA-HQ-OAR-2021-0427-1113_at_338). EPA made no assessment as to how the displacement of biodiesel in favor of renewable diesel under the biomass-based diesel program might impact the availability of biofuels *nationally*.

Second, EPA ignores the concerns of Congress when it excluded renewable fuel derived from "co-processing" with petroleum feedstocks from the definition of biomass-based diesel. 42 U.S.C. §7545(o)(1)(D). In distinguishing "co-processed" fuel, Congress was concerned that refiners simply use refinery resources to produce diesel fuel. 153 Cong. Rec. S8022, S8025 (June 20, 2007) (statement of Senator Kyl). EPA also has acknowledged that "changes in refinery capacity are not a requirement or goal" of the biomass-based diesel program. JA__ (EPA-HQ-OAR-2021-0427-0063_at_3-34). Yet much of the new renewable diesel capacity stems from refinery conversions. JA__ (EPA-HQ-OAR-2021-0427-1113_at_404); JA__-

---

[6] Biodiesel plants are located "around the country." JA__ (EPA-HQ-OAR-2021-0427-1113_at_83).

__ (EPA-HQ-OAR-2021-0427-0024); JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_8-9); JA__ (EPA-HQ-OAR-2021-0427-0428_attachment_4_at_4); JA__ (EPA-HQ-OAR-2021-0427-0813_at_20). EPA also acknowledged that "some of the energy in [renewable diesel] fuel comes from hydrogen," which is likely produced from fossil fuels. 87 Fed. Reg. 80,707 (JA__). "[C]o-processed renewable fuel cannot be biomass-based diesel." JA__ (EPA-HQ-OAR-2021-0427-0684_at_7). Moreover, where the biomass-based diesel program sets a *minimum* volume, there is nothing magical about the definition of "biomass-based diesel" that requires renewable diesel be used to meet this minimum. Indeed, Congress gave EPA authority to create "appropriate" biodiesel credit amounts. 42 U.S.C. §7545(o)(5)(A)(ii). And, as occurs today, the advanced biofuel program will continue to incentivize renewable diesel investments.

Third, displacing biodiesel under the biomass-based diesel program does not support the benefits Congress sought. Renewable diesel costs more than biodiesel.[7] *Compare* JA__ (EPA-HQ-OAR-2021-0427-1113_at_402), *with* JA__ (EPA-HQ-OAR-2021-0427-1113_at_405). Because the production process requires more energy, renewable diesel also provides less lifecycle greenhouse gas emissions

---

[7] Biodiesel *reduces* consumer costs. JA__ (EPA-HQ-OAR-2021-0427-0813_at_16). "[L]ow-cost biodiesel not only makes fuel cheaper for fleets and truck drivers, but it subsequently lowers shipping costs and thus makes all goods more affordable." JA__ (EPA-HQ-OAR-2021-0427-0813_attachment_2_at_1).

16

reductions than biodiesel. JA__ (EPA-HQ-OAR-2021-0427-0813_at_27-29). Biodiesel also reduces emissions from other air pollutants and has less impacts on the environment compared to renewable diesel, which EPA found was a source of the largest impacts on air emissions associated with the proposal, has greater impacts on water, and disproportionately impacts minority groups. JA__ (EPA-HQ-OAR-2021-0427-0267_at_113); JA__-__ (EPA-HQ-OAR-2021-0427-1113_at_243-244); 87 Fed. Reg. 80,617 (JA__). And, EPA had previously found that fuel diversification supports energy security. 77 Fed. Reg. 59,458, 59,471 (Sept. 27, 2012). These are all factors EPA was *required to consider* in establishing the rules under Set.[8] 42 U.S.C. §7545(o)(2)(B)(ii); *see also* JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_26-38).

Finally, EPA fails to consider its own policies regarding ensuring RIN liquidity and protecting against RIN market manipulation. *See* 87 Fed. Reg. 80,587 (JA__); 84 Fed. Reg. 10,584, 10,608-10,609 (Mar. 21, 2019); JA__ (EPA-HQ-OAR-2021-0427-0813_at_14). Unlike biodiesel, renewable diesel plants are larger, fewer, and increasingly affiliated with obligated parties. JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_13-16). As renewable diesel continues to take a stranglehold of the

---

[8] Biodiesel stakeholders have invested heavily in storage and distribution infrastructure, and those investments are at substantial risk of being stranded. JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_32-33).

biomass-based diesel program, there is a higher likelihood for anti-competitive behavior and RIN market manipulation. *Id.* The current RFS structure will allow greater market disparity and distortions that will keep consumers from benefitting from competition and *additional* environmental benefits. *Id.* Moreover, obligated parties are incentivized to meet their obligations, not to invest in new technologies, new feedstocks, or new infrastructure to support growth. *Id.* EPA ignored all these concerns.

For these reasons, EPA's failure to revise implementation of the biomass-based diesel volume requirements, even if not required, was arbitrary and an abuse of discretion.

> **2.     Like "implied" conventional biofuel requirements, the biomass-based diesel volume requirements should ensure a continued role for biodiesel.**

Any claims that biodiesel is seeking preferential treatment must be dismissed. Under the Set Rule, EPA recognized the importance of "sustained and predictable support of higher-level ethanol blends through the level of the implied conventional renewable fuel volume requirement." 88 Fed. Reg. 44,517 (JA__). As such, EPA chose to implement the "implied conventional renewable fuel volume" to ensure an ongoing role for ethanol, recognizing the impact the RFS has on the market. *Id.* This is because of the economic advantages to the agricultural sector and the energy security benefits. *Id.* Like the "implied conventional renewable fuel volume

requirement," the biomass-based diesel program also should serve to provide "ongoing support" for biodiesel. *Id. Biodiesel* similarly supports the agricultural sector and provides energy security benefits. JA__ (EPA-HQ-OAR-2021-0427-1113_at_353); JA__-__ (EPA-HQ-OAR-2021-0427-1113_at_356-357); JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_33-34). Indeed, biodiesel is an advanced biofuel and can be produced from a diversity of feedstocks, providing even more reasons to ensure ongoing support. EPA cannot justify why it believes Congress intended to support corn ethanol, but not biodiesel, which were the two renewable fuels it specifically intended to promote in establishing the RFS.

### C. EPA Impermissibly Ignored Alternatives to Implementing the Biomass-based Diesel Program.

It was incumbent on EPA to consider alternatives to its implementation of the biomass-based diesel volume requirements under 42 U.S.C. §7545(o)(2)(B)(ii). Failure to do so was arbitrary, an abuse of discretion, and violated the Clean Air Act's requirement to respond to comments. *Id*. §7607(d)(6)(B).

EPA only claims that the alternatives suggested were "beyond the scope of the proposed rule." JA__ (EPA-HQ-OAR-2021-0427-1114_at_58). But the public should have anticipated the proposed alternatives, making them a logical outgrowth of the proposal even if EPA's proposal "did not explicitly suggest" the alternatives. *Great Lakes Commun. Corp. v. FCC*, 3 F.4th 470, 478 (D.C. Cir. 2021); *see also Brennan v. Dickson*, 45 F.4th 48, 68-69 (D.C. Cir. 2022); *Chesapeake Climate*

*Action Network v. EPA*, 952 F.3d 310, 319-20 (D.C. Cir. 2020). EPA requested

comment on "the proposed increase to the [biomass-based diesel] standard and

whether other options should be considered," 87 Fed. Reg. 80,626 (JA__), and EPA

claimed to review the continued need to utilize single percentage standards. *Id*. at

80,630 (JA__). EPA also acknowledged that biodiesel would likely decrease and

referenced concerns with current RFS implementation pointed out by SABR. *Id*. at

80,597-80,599 (JA__-__). Moreover, SABR's proposal would merely have ensured

the biodiesel volumes previously used to meet the RFS requirements would

continue. JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_17-18); JA__ (EPA-HQ-

OAR-2021-0427-0813_at_35). EPA also ignored the alternative option to establish

a subcategory for biodiesel within the biomass-based diesel program.

   The public was on fair notice of other options to implementing the biomass-

based diesel volume requirements rather than through a single percentage standard.

*Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 494

F.3d 188, 209 (D.C. Cir. 2007) (quoting *Long Island Care at Home, Ltd. v. Coke*,

127 S. Ct. 2339, 2351 (2007)). Fair notice was evident by public comments

responding to SABR's proposal. JA__ (EPA-HQ-OAR-2021-0427-0627_at_9);

JA__ (EPA-HQ-OAR-2021-0427-0812_at_10); *see Appalachian Power Co. v. EPA*,

135 F.3d 791, 816 (D.C. Cir. 1998). In addition, creating subcategories to implement

the volume requirements are not new ideas. JA__ (EPA-HQ-OAR-2021-0427-

0045_at_342). Moreover, EPA does not explain why it could not have provided a supplemental notice to seek such comments if needed.

In any event, merely ignoring these comments does not comply with EPA's obligations. Indeed, EPA previously did respond to similar comments, requesting a subcategory within the cellulosic biofuel program for renewable electricity. JA__-__ (EPA-HQ-OAR-2021-0427-0045_at_56-57). That response, however, largely relied on the fact that one statutory volume for "cellulosic biofuels" was provided for that year and on a provision, 42 U.S.C. §7545(o)(3), that does not apply post-2022.[9] 88 Fed. Reg. 44,519-44,520 (JA__-__); JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_23-26). In light of EPA's discretion in implementing the volume requirements under Set, it was incumbent on EPA to respond to comments here and define the scope of its discretion. EPA's dismissal of such comments was arbitrary.

## III. AT A MINIMUM, EPA WAS REQUIRED TO REASSESS THE INCLUSION OF RENEWABLE JET FUEL IN THE BIOMASS-BASED DIESEL PROGRAM.

EPA contended that "biomass-based diesel" cannot be limited to biodiesel because "[b]oth biodiesel and renewable diesel are diesel fuel substitutes that meet the registration requirements for fuels and fuel additives under [42 U.S.C. §7545],

---

[9] This provision does not prohibit EPA from establishing subcategories to "ensure" the volumes. 42 U.S.C. §7545(o)(3). Rather, it requires "a single applicable percentage that applies to all [obligated parties]." *Id.* §7545(o)(3)(B)(ii)(III). That is, for any particular volume requirement, all obligated parties should be subject to the same standards.

and thus both fuels meet the definition of biomass-based diesel." JA__ (EPA-HQ-OAR-2021-0427-1114_at_58). As noted above, renewable diesel is not a "diesel fuel substitute." Regardless, renewable jet fuel is clearly neither a diesel fuel substitute nor meets the registration requirements under 42 U.S.C. §7545. EPA cannot both claim the definition of biomass-based diesel is sacrosanct, while also redefining it to include renewable jet fuel.

Even if the definition of biomass-based diesel is broader, the fuel still must be (1) "a diesel fuel substitute" that (2) meets EPA's fuel and fuel additives registration requirements. 42 U.S.C. §13220(f). The fuel and fuel additives registration requirements apply to motor vehicle fuels, not jet fuel. 40 C.F.R. §§79.32, 79.33; *see also* 42 U.S.C. §13220 (applying to motor vehicle fleet requirements). And emissions from aircraft are dealt with under 42 U.S.C. §7571, not §7545. While nonroad fuels may be regulated, EPA deemed jet fuel was not an RFS obligated "transportation fuel." JA__ (EPA-HQ-OAR-2021-0427-0063_at_3-198). Biodiesel is not used in jet fuel and does not compete in that market. Yet, despite recognition that biodiesel production is being displaced by renewable diesel facilities (which also produce jet fuel), EPA is still forcing biodiesel to compete with jet fuel in the biomass-based diesel market. This makes no sense.

In addition, biomass-based diesel must be a "diesel fuel" substitute. Jet fuel is not a substitute for diesel fuel. JA__ (EPA-HQ-OAR-2021-0427-0813_at_21). At

most, EPA has explained that renewable jet fuel can be produced at renewable diesel facilities. 78 Fed. Reg. 14,190, 14,198, 14,201 (Mar. 5, 2013). But, EPA has also approved ethanol-to-jet fuel as "biomass-based diesel," and ethanol is produced from different feedstocks (i.e., starches/sugars) than lipids. JA__ (EPA-HQ-OAR-2021-0427-0813_at_22); 42 U.S.C. §13220(f)(1)(B).

EPA's treatment of renewable jet fuel as biomass-based diesel further illustrates that its implementation of that program is inconsistent with the statute. It was incumbent on EPA to revise that implementation in setting the "rules" for the volumes post-2022 under 42 U.S.C. §7545(o)(2)(B)(ii). Its failure to do so was arbitrary and an abuse of discretion,[10] particularly in light of its admission that biodiesel facilities are underutilized and use is decreasing. The program is to be market-forcing to increase renewable fuel use, not displace long-standing renewable fuel production.

_____

[10] Reviewing implementation of the program for purposes of Set necessarily includes assessing the fuels considered for meeting each requirement. 87 Fed. Reg. at 80,625 (JA__). Whether renewable jet fuel (or renewable diesel) properly can be used toward meeting the biomass-based diesel requirements post-2022 is reviewable, particularly where EPA acknowledges increased interest in expanding its production. *Id.* at 80,596 (JA__); JA__ (EPA-HQ-OAR-2021-0427-0813_at_22). Any prior determinations regarding the scope of the biomass-based diesel program are reopened. *See Ohio v. EPA*, 838 F.2d 1325, 1328 (D.C. Cir. 1988) ("[T]he period for seeking judicial review may be made to run anew when the agency in question by some new promulgation creates the opportunity for renewed comment and objection.") (citation omitted); *Sierra Club v. EPA*, 551 F.3d 1019, 1024-1026 (D.C. Cir. 2008) (finding constructive reopening of provision linked to regulatory change).

IV.  **THE EQUIVALENCE VALUE FOR RENEWABLE DIESEL IS UNLAWFUL, RENDERING THE CONVERSION FACTOR FOR BIOMASS-BASED DIESEL ARBITRARY.**

EPA established the equivalence value to represent "the number of gallons that can be claimed for compliance purposes for every physical gallon of renewable fuel." 75 Fed. Reg. 14,709. The equivalence value was based on energy content to measure "the extent to which a renewable fuel would replace or reduce the quantity of petroleum or other fossil fuel present in a fuel mixture." *Id.* Rather than requiring ethanol-equivalent gallons, the biomass-based diesel mandate is based on replacing diesel volumes. *Id.* at 14,710. To ensure replacement of diesel gallons, EPA established a formula for calculating the biomass-based diesel standard "such that one physical gallon of biomass-based diesel will count as one gallon for purposes of meeting the biomass-based diesel standard." *Id.* Acknowledging the statute was likely "based on projections for biodiesel," EPA used biodiesel's 1.5 equivalence value in the formula, illustrated below:

$$\text{Standard} = 100\% * \frac{\text{Volume Requirement x 1.5}}{[\text{Projection of gasoline/diesel fuel usage}]}.$$

*Id.* at 14,710, 14,867; 40 C.F.R. §80.1415(b)(2).

In the proposal, EPA indicated that it believed it was "appropriate to modify the factor used in the formula to more accurately reflect the amount of renewable diesel in the [biomass-based diesel] pool." 87 Fed. Reg. 80,686 (JA__). Due to the increasing percentage of renewable diesel, most of which has a higher equivalence

value of 1.7, EPA proposed to revise the factor to 1.57 *Id.*; 40 C.F.R. §80.1415(b)(4).

In the final rule, EPA indicated that 2022 data showed the average equivalence value

to be closer to 1.59 and rounded the conversion factor to 1.6. 88 Fed. Reg. 44,547

(JA__). The revised formula is illustrated below:

Standard=100%*<u>Volume Requirement x 1.6            </u>
[Projection of gasoline/diesel fuel usage].

*Id.* at 44,581 (JA__). This was error.

EPA indicated it may adjust the factor "as appropriate" based on additional

data, 87 Fed. Reg. 80,686 (JA__), but the proposal also indicated that the renewable

diesel equivalence values were too high. *Id.* at 80,707 (JA__). Renewable diesel is

produced using hydrogen from fossil natural gas that contributes to the fuel's energy

content, but EPA never accounted for this in setting the equivalence value, assuming

100% of the fuel was renewable. *Id.*; JA__ (EPA-HQ-OAR-2021-0427-0012_at_4).

Yet for biodiesel, EPA reduced the equivalence value based on the use of non-

renewable methanol in the production process even though "all of the energy in the

fuel comes from the feedstock." 87 Fed. Reg. 80,705 (JA__). Indeed, the renewable

diesel equivalence value is closer to 1.5 when accounting for hydrogen's

contribution to the fuel's energy content. JA__-__ (EPA-HQ-OAR-2021-0427-

1147); JA__-__ (EPA-HQ-OAR-2021-0427-1148).

This difference matters. Renewable diesel plants averaged about 160 million gallons in capacity.[11] JA__ (EPA-HQ-OAR-2021-0427-0813_at_7). That's an average of 32 million additional RINs generated between a 1.5 and 1.7 equivalence value. At $1.65 per RIN, *id.*, this results in almost $53 million in additional RIN value, giving a windfall to renewable diesel producers even though fossil fuel was not actually replaced for that portion of the fuel's energy. This creates a significant disadvantage to biodiesel producers, which are penalized for using methanol, that are competing with these fuels.

EPA acknowledged the difference in equivalence values is an "additional incentive renewable diesel is provided over biodiesel." JA__ (EPA-HQ-OAR-2021-0427-1114_at_64). However, EPA retained the current equivalence values, claiming "fuels with higher energy content generally provide greater value as transportation fuel." *Id.* This ignores that B20 blends have similar fuel economy as renewable diesel, and biodiesel burns more efficiently because it has greater lubrication and leaves fewer particulate deposits behind. JA__ (EPA-HQ-OAR-2021-0427-0813_at_6). Regardless, it ignores that renewable fuel must *displace fossil fuel*. 42 U.S.C. §7545(o)(1)(J); *see also* 87 Fed. Reg. 80,704 ("Fuel that derives its energy from fossil fuel (a subset of non-renewable feedstocks) is replacing one form of

---

[11] This average is higher now, according to the Energy Information Administration (https://www.eia.gov/biofuels/renewable/capacity/ (last updated Aug. 7, 2023)).

fossil fuel for another, not reducing the quantity of fossil fuel present in a transportation fuel.") (JA__).

Although EPA stated it did "not believe that fuel producers should be able to generate RINs for the portion of the finished fuel that is not derived from renewable biomass," 87 Fed. Reg. 80,705 (JA__), it doubled down on the 1.7 equivalence value for renewable diesel in the final rule. *See, supra* n.10. This was unlawful. Even if not violative of the Act, it was arbitrary and an abuse of discretion, as it continues to disadvantage biodiesel producers, picking winners and losers by displacing biodiesel, rather than being a market-forcing policy.

## CONCLUSION

The petition for review must be granted. The allowance that renewable diesel and renewable jet fuel be used to meet biomass-based diesel volume obligations, the revised formula for setting the biomass-based diesel standard, and the renewable diesel equivalence values must be vacated. "'[V]acatur is the normal remedy' when a rule is found unlawful." *Am. Pub. Gas Ass'n v. DOE*, 72 F.4th 1324, 1342 (D.C. Cir. 2023) (citations omitted). The volume requirements are severable and should remain while EPA corrects the rule's infirmities.

Respectfully submitted,

/s/ Sandra P. Franco
Sandra P. Franco
Franco Environmental Law, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
T 202 256-6115
sandra@francoenvironmentallaw.com

Jerome C. Muys, Jr.
Muys & Associates, LLC
910 17th Street, NW, Suite 800
Washington, DC 20006
T 301-785-0602
jmuys@muyslaw.com

*Counsel for Sustainable Advanced Biofuel
Refiners Coalition*

Dated:  March 22, 2024

# CERTIFICATION OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), the undersigned hereby certifies that the foregoing Initial Opening Brief of Petitioner:

1.      Complies with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font; and

2.      Complies with the word limit of 11,000 words for "Renewable Energy Petitioners" under this Court's February 14, 2024 Order (Doc. #2040364) because it is 5,599 words based on Microsoft Word for Microsoft 365, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

Dated: March 22, 2024                    Respectfully submitted,


                                  _/s/ Sandra P. Franco_____
                                  Sandra P. Franco

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of March, 2024, I caused to be electronically filed the foregoing Initial Opening Brief of Petitioner Sustainable Advanced Biofuel Refiners Coalition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the Court's CM/ECF system, which will serve counsel of record.

*/s/ Sandra P. Franco*
Sandra P. Franco