ORAL ARGUMENT SCHEDULED FOR NOVEMBER 1, 2024
CASE NO. 23-1177 (and consolidated cases)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY,
*Petitioner,*

v.

ENVIRONMENTAL PROTECTION AGENCY, et al.,
*Respondents.*

ON PETITION FOR REVIEW FROM THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY

**INITIAL REPLY BRIEF OF PETITIONER
SUSTAINABLE ADVANCED BIOFUEL REFINERS COALITION**

Sandra P. Franco
Franco Environmental Law LLC
600 Pennsylvania Ave., SE
Unit 15577
Washington, DC 20003
T 202-256-6115
sandra@francoenvironmentallaw.com

Jerome C. Muys, Jr.
Muys & Associates, LLC
910 17th Street, NW, Suite 800
Washington, DC 20006
T 301-785-0602
jmuys@muyslaw.com

*Counsel for Sustainable Advanced
Biofuel Refiners Coalition*

**Dated:  August 20, 2024**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. ii

GLOSSARY OF ACRONYMS AND ABBREVIATIONS....................................iv

SUMMARY ......................................................................................1

ARGUMENT ....................................................................................1

I.     Challenges to Implementation of the Biomass-Based Diesel Program Post-2022 are Properly Raised ...............................................1

II.    The Statute's Plain Text Limits Biomass-Based Diesel to Diesel Fuel Substitutes ......................................................................4

III.   EPA Cannot Defend its Arbitrary Program Implementation that Favors Renewable Diesel and Jet Fuel Over Biodiesel ......................7

IV.   EPA's Equivalence Value for Renewable Diesel is Unlawful ..........11

      A.    SABR has standing to challenge the 1.6 conversion factor.....11

      B.    This Court must vacate the renewable diesel equivalence value ...........................................................................12

CONCLUSION ..................................................................................13

CERTIFICATION OF COMPLIANCE ...............................................................15

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Alon Ref. Krotz Springs, Inc. v. EPA*,
  936 F.3d 628 (D.C. Cir. 2019)...............................................................3

*Am. Fuel & Petrochemical Mfrs. v. EPA*,
  937 F.3d 559 (D.C. Cir. 2019)...............................................................2

*Am. Fuel & Petrochemical Mfrs. v. EPA*,
  3 F.4th 373 (D.C. Cir. 2021)................................................................11

*Charter Commc'ns v. FCC*,
  460 F.3d 31 (D.C. Cir. 2006)...............................................................13

*Coalition for Renewable Natural Gas v. EPA*,
  108 F.4th 846, 2024 U.S.App.LEXIS 17740 (D.C. Cir. 2024) ......................7, 13

*CTIA v. FCC*,
  466 F.3d 105 (D.C. Cir. 2006).............................................................2

*Delta Constr. Co. v. EPA*,
  783 F.3d 1291 (D.C. Cir. 2015)...........................................................6

*Grayscale Invs., LLC v. SEC*,
  82 F.4th 1239 (D.C. Cir. 2023)............................................................13

*Johnson v. Copyright Royalty Bd.*,
  969 F.3d 363 (D.C. Cir. 2020).............................................................7

*Loper Bright Enters. v. Raimondo*,
  144 S. Ct. 2233 (2024)......................................................................6

*Montana v. Clark*,
  749 F.2d 740 (D.C. Cir. 1984).............................................................1

*Ohio v. EPA*,
  838 F.2d 1325 (D.C. Cir. 1988)...........................................................3

*Sinclair Wyo. Ref. Co. v. EPA*,
  __F.4th__, 2024 U.S.App.LEXIS 20424 [2024 WL 3801747]
  (D.C. Cir. 2024) .............................................................................8

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

### FEDERAL STATUTES AND LEGISLATIVE MATERIALS

26 U.S.C. §40A ........................................................................5

26 U.S.C. §45K ........................................................................5

42 U.S.C. §7545(o)(1)(A) ........................................................6

42 U.S.C. §7545(o)(2)(B) .....................................................3, 9

42 U.S.C. §13220(f) ..............................................................5, 6

42 U.S.C. §16105(e) ................................................................5

42 U.S.C. §17021(c) ................................................................5

Pub. L. No. 110-343 (2008) .....................................................6

### ADMINISTRATIVE MATERIALS

40 C.F.R. §80.2 ....................................................................5, 7

40 C.F.R. §80.1407(e)..............................................................7

40 C.F.R. §80.1426, Table 1 ...................................................5

84 Fed. Reg. 26,980 (June 10, 2019) ....................................10

87 Fed. Reg. 80,582 (Dec. 30, 2022).......................1, 2, 3, 9, 12

88 Fed. Reg. 44,468 (July 12, 2023)..............1, 2, 3, 4, 11, 12

### MISCELLANEOUS

Ahmed I. Osman, et al., *Optimizing Biodiesel Production From Waste
With Computational Chemistry, Machine Learning and Policy Insights*,
Environmental Chemistry Letters, Vol. 22, pp. 1005-1071 (2024),
https://link.springer.com/article/10.1007/s10311-024-01700-y ..........................5

National Renewable Energy Laboratory, *Production of Biodiesels from
Multiple Feedstocks and properties of Biodiesels and Biodiesel/Diesel
Blends* (2003), *available at* https://www.nrel.gov/docs/fy03osti/31460.pdf .......5

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

Pursuant to Circuit Rule 28(a)(3), the following is a glossary of acronyms and abbreviations used in this brief:

| | |
|---|---|
| ASTM | ASTM International |
| EPA | Respondent U.S. Environmental Protection Agency |
| SABR | Petitioner Sustainable Advanced Biofuel Refiners Coalition |
| Refiners | Petitioners American Fuel & Petrochemical Manufacturers, et al. |
| Refiner-Intervenors | Respondent-Intervenors American Fuel & Petrochemical Manufacturers and American Petroleum Institute |
| RFS | Renewable Fuel Standard |
| RIN | Renewable Identification Number |

iv

## SUMMARY

New and unsupported explanations cannot defend EPA's unlawful and arbitrary implementation of the biomass-based diesel program post-2022 that disadvantages and harms producers of biodiesel—an advanced biofuel that furthers Congress's goals. EPA's attempts to avoid review must be rejected.

## ARGUMENT

### I. Challenges to Implementation of the Biomass-Based Diesel Program Post-2022 are Properly Raised.

EPA claims (at 71-73) challenges to the implementation of the biomass-based diesel program post-2022 are untimely because EPA included renewable diesel and jet fuel in the biomass-based diesel program years ago. EPA then claims (at 73-76) the rulemaking did not reopen these issues. EPA is wrong on both counts.

The "'Set rule' marks a new phase for the RFS program." 88 Fed. Reg. 44,468, 44,469 (July 12, 2023) (JA__); *see also id.* 44,513 (JA__) ("Congress has instructed us to begin a new phase" of RFS); Refiners' Br. 1 (referring to program's "second phase"). This new phase required EPA to determine not just the volumes but *how to implement* them. 87 Fed. Reg. 80,582, 80,584 (Dec. 30, 2022) (JA__). EPA chose an approach similar to implementation of pre-2023 volumes. SABR Br. 10; 88 Fed. Reg. 44,478 (JA__). This is reviewable. *Montana v. Clark*, 749 F.2d 740, 744 (D.C. Cir. 1984) ("The law in this circuit is clear that an agency decision not to amend

longstanding rules after a notice and comment period is reviewable agency action.")
(citation omitted).

EPA indicated it would consider SABR's implementation approach for the proposal. JA__-__ (EPA-HQ-OAR-2021-0427-0428_attachment_2). EPA now claims (at 74) its request for comments on "other options" for biomass-based diesel only related to increasing volumes. But EPA was discussing how the program incentivizes biomass-based diesel and other advanced biofuels and elsewhere asked for comments on alternative volumes. 87 Fed. Reg. 80,625-80,626 (JA__-__), 80,628-80,630 (JA__-__). Moreover, EPA did not limit the "other options" on which it sought comment. *Cf. Am. Fuel & Petrochemical Mfrs. v. EPA*, 937 F.3d 559, 585-586 (D.C. Cir. 2019) (addressing issue EPA stated was not reopened). Reopening need not be explicit, and ambiguity favors finding reopening. *CTIA v. FCC*, 466 F.3d 105, 110-112 (D.C. Cir. 2006). Here, SABR did suggest another option—requiring 2 billion gallons of biodiesel in 2024.

This is far from an "unsolicited request" to challenge an old rule. EPA Br. 75. Rather, *EPA* claims its discretion in implementing the volumes is constrained by the biomass-based diesel definition, requiring explaining why that is incorrect. 88 Fed. Reg. 44,478 (JA__); JA__ (EPA-HQ-OAR-2021-0427-1114_at_58). EPA also raised several "policy considerations," including how the rule can further energy security and impacts refining assets, how EPA can accelerate decarbonization and

2

support sustainable aviation fuel, and how to enhance RIN market liquidity. 87 Fed. Reg. 80,587 (JA__). Ensuring roles for biodiesel (lower carbon fuels) through the biomass-based diesel program and for renewable diesel and jet fuel through the advanced biofuel program promotes energy security, accelerates decarbonization, enhances RIN market liquidity, and supports sustainable aviation fuel. JA__-__, JA__ (EPA-HQ-OAR-2021-0427-0749_attachment_1_at_11-12,14); JA__-__, JA__-__ (EPA-HQ-OAR-2021-0427-0813_attachment_1_at_25-32,38-40). Ensuring minimum biodiesel volumes also addresses other issues on which EPA sought comment, including the rule's impacts on greenhouse gas emissions, the economy, and environmental justice. SABR Br. 16-17; EPA Br. 73; 87 Fed. Reg. 80,611 (JA__), 80,615 (JA__), 80,617 (JA__). Considering the entire context, EPA "create[d] the opportunity for renewed comment and objection" on implementation of the biomass-based diesel program.[1] *Ohio v. EPA*, 838 F.2d 1325, 1328 (D.C. Cir. 1988) (citation omitted).

This context includes new circumstances for determining how to implement the different categories, including considering the fuels incentivized to meet each volume requirement. *See Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 645-646 (D.C. Cir. 2019); SABR Br. 4-5, 9-10. EPA was required to review the

---

[1] SABR (at 4-5, 9-10, 23) explained this reopener. There was no waiver. EPA Br. 75 n.16.

program's implementation, 42 U.S.C. §7545(o)(2)(B)(ii), and EPA reviewed the fuels it believed would be used to meet the volume requirements. *See, e.g.,* 88 Fed. Reg. 44,484-44,485 (JA__-__). It was incumbent on EPA to ensure it was fulfilling Congressional intent in doing so.

Finally, EPA claims it properly ignored public comments because *finalizing* SABR's approach would not be a logical outgrowth of the proposal. EPA Br. 75-76, 85-86. Telling, Refiner-Intervenors do not deny fair notice. Moreover, such claims are disingenuous when the final rule had numerous changes that were not specifically proposed. *See, e.g.,* JA__-__, JA__ (EPA-HQ-OAR-2021-0427-1114_at_282-283,341) (discussing changes to address comments); 88 Fed. Reg. 44,575 (JA__) (codifying new §80.155(f)). Further, EPA could have requested additional comments. In any event, a broad "biomass-based diesel" definition does not explain why EPA ignored comments supporting subcategories. EPA Br. 85.

## II. The Statute's Plain Text Limits Biomass-Based Diesel to Diesel Fuel Substitutes.

While EPA claims (at 76) that it has long defined "biomass-based diesel" to include renewable diesel and jet fuel, it has not analyzed the "plain language of the statute." Instead, EPA and Refiner-Intervenors use a different definition of "biodiesel," changing "*a* diesel fuel *substitute*" to "*any* fuel that can be used (*or produced*) in lieu of *petroleum-based* diesel." EPA Br. 77; Refiner-Intervenors Br. 2. But that is not what the statute says. SABR Br. 11-12, 22-23.

EPA incorrectly claims that SABR seeks to limit "biodiesel" to a "specific technical definition." EPA Br. 78. SABR is distinguishing biodiesel from renewable diesel, arguing that when Congress passed 42 U.S.C. §13220(f) it was referencing biodiesel (i.e., mono-alkyl esters). SABR Br. 11. The legislative history also shows Congress sought to promote *biodiesel* under the RFS. EPA Br. 80; SABR Br. 3-4, 16. And, contrary to Refiners-Intervenors' claim (at 3-4), biodiesel is "a" diesel fuel substitute that involves a class of fuels—different feedstocks and processes can produce biodiesel. *See* 40 C.F.R. §80.1426, Table 1; National Renewable Energy Laboratory, *Production of Biodiesels from Multiple Feedstocks and Properties of Biodiesels and Biodiesel/Diesel Blends*, at 2-4 (2003), https://www.nrel.gov/docs/fy03osti/31460.pdf.[2] Moreover, *EPA* limits biodiesel to mono-alkyl esters that meet ASTM D6751. 40 C.F.R. §80.2.

EPA then cites (at 78) the "biomass-based diesel" and "biodiesel" definitions in 42 U.S.C. §17021(c) regarding pump labeling. The key difference between these definitions is that biodiesel must meet ASTM D6751. *See also* 42 U.S.C. §16105(e)

---

[2] Refiner-Intervenors (at 4) note §13220(f) allows for feedstocks in addition to the more common ones used to produce biodiesel. But, oily fractions of the listed wastes can be used to produce biodiesel. *See* Ahmed I. Osman, et al., *Optimizing Biodiesel Production From Waste With Computational Chemistry, Machine Learning and Policy Insights*, 22 Environmental Chemistry Letters 1005-1071 (2024), https://link.springer.com/article/10.1007/s10311-024-01700-y. These feedstocks represent fatty acids, not "biomass" generally (e.g., sugars/starches that EPA impermissibly has included). SABR Br. 23; *cf.* 26 U.S.C. §§40A(f)(3), 45K(c)(3).

(engine testing program). This makes sense because of the market's fuel quality concerns. JA__ (EPA-HQ-OAR-2021-0427-0813_at_2). The statute here, however, does not impose this limitation.

Even if other fuels meet the statutory definition, renewable diesel (i.e., diesel fuel meeting ASTM D975 that does not distinguish renewable from petroleum diesel) and jet fuel do not. *Compare Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1295 (D.C. Cir. 2015) (discussing vegetable oil diesel fuel substitute), *with* JA__-__ (EPA-HQ-OAR-2021-0427-0230_at_2-3). EPA simply assumes renewable diesel is a diesel fuel substitute "within the meaning of the text." EPA Br. 77; *see also* Refiner-Intervenors Br. 5 n.3. But, statutory interpretation is "exclusively a judicial function." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024) (citations omitted). An agency's characterization cannot supersede Congress defining renewable diesel as "diesel fuel." SABR Br. 11-12; *cf.* Pub. L. No. 110-343, §202(c), (e), 122 Stat. 3832-3833 (2008).

EPA also has not explained why Congress defined renewable jet fuel as "additional renewable fuel," 42 U.S.C. §7545(o)(1)(A), if it meets the "biomass-based diesel" definition. Instead, EPA *now* says the "statute does not mandate that EPA register all diesel fuel substitutes that are used to satisfy the biomass-based diesel or other volume requirements." EPA Br. 80. But that is criteria that must be met to be "biodiesel" under §13220(f). SABR Br. 22. EPA then contends if

renewable jet fuel is used as No. 1 diesel, it must be registered.[3] EPA Br. 80. In such a case, however, it would not be "jet fuel." 40 C.F.R. §80.2. Otherwise, EPA's exclusion of jet fuel from RFS obligated "diesel fuels" makes no sense. *Id.* §80.1407(e).

## III.  EPA Cannot Defend its Arbitrary Program Implementation that Favors Renewable Diesel and Jet Fuel Over Biodiesel.

Even if "biomass-based diesel" is more broadly defined, claims that EPA loses discretion to ensure a role for biodiesel because it *must* allow all potential diesel fuel substitutes to meet the biomass-based diesel requirements are simply wrong. *See Coalition for Renewable Natural Gas v. EPA*, 108 F.4th 846, 2024 U.S.App.LEXIS 17740, at *11 (D.C. Cir. 2024) (finding biogas—a listed advanced biofuel—could "be excluded entirely"). EPA and Refiner-Intervenors ignore that EPA sets *minimum* volumes and that EPA may assess credits "as appropriate" for biodiesel. SABR Br. 13, 16. And, neither EPA nor Refiner-Intervenors explain why or how renewable diesel and jet fuel falling within the biomass-based diesel program furthers Congress's goals or has any purpose at all. Where EPA found the advanced biofuel volumes are driving biomass-based diesel volumes, the biomass-based diesel category is impermissibly superfluous post-2022

---

[3] EPA (at 77 n.17) attempts to explain its lack of any supporting evidence, but EPA's failure to have provided support does not allow post-hoc rationalizations. *Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 387 (D.C. Cir. 2020) (citation omitted).

under EPA's reading. SABR Br. 12-13; *see Sinclair Wyo. Ref. Co. v. EPA*, __F.4th__, 2024 U.S.App.LEXIS 20424, at \*29 (D.C. Cir. 2024). Because EPA's implementation disadvantages biodiesel and EPA failed to consider these issues, its actions were arbitrary and an abuse of discretion.

SABR's objection (at 5, 14, 22) is that EPA's program implementation results in *declining* biodiesel production. Where Congress sought to *promote* biodiesel, SABR is trying to level the playing field and protect existing investments (asking for volumes that have been *met*). Mischaracterizations that SABR seeks to remove competition must be rejected. EPA Br. 81; Refiner-Intervenors Br. 2. Competition—EPA's policy—remains among numerous biodiesel producers and with other fuels if biodiesel producers seek to exceed the requested minimum volume.

Rather than look at *Congress's* intent, EPA then mischaracterizes SABR's arguments regarding "the geographic reach of other products" and the exclusion of "co-processing" from the definition of biomass-based diesel. EPA Br. 82, 83-84. Without biodiesel, biomass-based diesel will largely be used in California, yet Congress sought use throughout the country. SABR Br. 15. With respect to excluding co-processing, Congress was concerned with what is actually occurring

8

today—refiners taking hold of the biomass-based diesel market.[4] *Id.* 15-16. EPA ignores evidence that eliminating biodiesel would *decrease* fuel diversity, negatively impacting energy security. EPA Br. 81; JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_13-16). EPA's failure to consider these issues was arbitrary.

   Failing to consider the impacts of displacing biodiesel, EPA also ignores evidence that the factors in §7545(o)(2)(B)(ii) support ensuring a role for biodiesel.[5] EPA Br. 82-83. Instead, EPA cites its regulatory impact analysis that does not "demonstrate environmental benefits" of renewable diesel, noting insufficient information. JA__-__ (EPA-HQ-OAR-2021-0427-1113_at_116-117); *cf.* JA__-__ (EPA-HQ-OAR-2021-0427-0813_at_29-31). EPA then ignores that *obligated parties*, which are increasingly controlling renewable diesel production and have different rules regarding RINs than biodiesel producers, are in a better position to manipulate the RIN market. SABR Br. 17-18. While Refiner-Intervenors complain there is no evidence of manipulation (at 12) (ignoring individual RIN holdings are

---

[4] EPA ignores its proposed definition of co-processed fuel would have excluded renewable diesel. EPA Br. 84; JA__-__ (EPA-HQ-OAR-2021-0427-0812_at_27-28). For biodiesel, EPA found the energy came from renewable biomass and was not impacted. 87 Fed. Reg. 80,705 (JA__).

[5] EPA states if biodiesel is more affordable, which its own data shows, JA__-__ (EPA-HQ-OAR-2021-0427-1113_at_428-430), then biodiesel should be competitive. EPA Br. 83 n.18. This makes SABR's point. It cannot because of the unfair advantages renewable diesel has and forced competition with jet fuel under EPA's program implementation.

not publicly available), fewer entities that hold RINs affects RIN liquidity. JA__-__ (EPA-HQ-OAR-2021-0427-0547_at_2-3); 84 Fed. Reg. 26,980, 27,016 (June 10, 2019) ("[C]oncentration can be a concern even for markets with many participants when only a few control the majority of available supply at any given point in time."), *id.* 27,018 (noting corporate and contractual affiliates affect market share).

Failing to show how its program implementation furthers Congress's goals, EPA then claims its implementation is not decreasing biodiesel volumes, pointing to a no-RFS scenario to argue it still supports biodiesel. EPA Br. 81-82. This is a false comparison, as the purpose of the RFS is to drive market demand. Nonetheless, EPA asks this Court to compare an estimated 632 million gallons of biodiesel and 1,084 million gallons of renewable diesel in a no-RFS scenario in 2023 with the 1,737 million gallons of biodiesel and 1,361 million gallons of renewable diesel under the RFS in 2022. EPA Br. 82 (citing JA__, JA__ (EPA-HQ-OAR-2021-0427-1113_at_98,100)). But EPA's projected volumes for 2023-2025 for biodiesel are decreasing from the 2022 volume. JA__ (EPA-HQ-OAR-2021-0427-1113_at_103). And this shows that the biomass-based diesel volumes are more determinative of market demand for biodiesel than for renewable diesel, supporting SABR's approach to give the biomass-based diesel program meaning.

Finally, EPA ignores its disparate treatment of biodiesel compared to ensuring incentives for increasing ethanol. EPA Br. 49-50, 84-85; SABR Br. 18-19. Refiner-

Intervenors (at 12-13) unsupported protest that EPA cannot require ethanol is a red herring—most of the *15-billion-gallon* "implied" conventional program is met with ethanol. Biodiesel production, however, is steadily decreasing under the RFS. JA__, JA__ (EPA-HQ-OAR-2021-0427-1113_at_25,103). The RFS is supposed to be *market-forcing*.

## IV.    EPA's Equivalence Value for Renewable Diesel is Unlawful.

### A.    SABR has standing to challenge the 1.6 conversion factor.

EPA's standing argument (at 86-88) is easily rejected. EPA claims the revised conversion factor results in a higher percentage standard, but EPA found this change does *not* result in increased demand for *gallons*. 88 Fed. Reg. 44,546 (JA__). As noted above, EPA's own assessment shows a *decrease* in biodiesel use under the RFS through 2025. Instead, having to retire more *RINs* benefits renewable diesel producers that unlawfully generate 1.7 RINs per gallon as the higher equivalence value is even more attractive, establishing competitor standing. SABR Br. 8, ADD14-ADD15; JA__-__ (EPA-HQ-OAR-2021-0427-0436_at_2-3); *Am. Fuel & Petrochemical Mfrs. v. EPA*, 3 F.4th 373, 379-380 (D.C. Cir. 2021). Contrary to EPA's contentions, adhering to the unlawful equivalence value to determine the conversion factor is flawed agency action. EPA Br. 88.

11

**B.    This Court must vacate the renewable diesel equivalence value.**

Rather than defend its unlawful renewable diesel equivalence value, EPA claims discretion to defer any final action that may be related to its proposed definition of "produced from renewable biomass." EPA Br. 88-91. Regardless of this definition, EPA chose to adhere to the 1.7 equivalence value based on "energy content," making no reference to any ongoing debate. SABR Br. 24-27; JA__ (EPA-HQ-OAR-2021-0427-1114_at_56). This, however, allows for RINs for the non-renewable biomass portion of renewable diesel, making this (indefinite) continued reliance unlawful.

Renewable fuel must be produced from renewable biomass. EPA Br. 14. While EPA discussed equivalence values in the context of its proposed definition of produced from renewable biomass, that proposal sought to clarify the meaning for *new* fuels. 87 Fed. Reg. 80,704-80,705 (JA__-__). EPA cites no evidence that the mass-based versus energy-based definition EPA is still reviewing impacts the equivalence value for renewable diesel produced using non-renewable hydrogen. *Id.* 80,705 (JA__); JA__-__ (EPA-HQ-OAR-2021-0427-0017); 88 Fed. Reg. 44,551 (JA__).

Instead, it is undisputed that a portion of the RINs being generated under the 1.7 equivalence value for renewable diesel today is attributable to *non-renewable biomass*. The record, including information needed to revise that equivalence value,

was complete. *Cf. Charter Commc'ns v. FCC*, 460 F.3d 31, 43 (D.C. Cir. 2006), *cited in* EPA Br. 91. This Court found EPA has a "nonnegotiable" task to ensure the volume requirements are met using fuel from renewable biomass. *Coalition for Renewable Natural Gas*, 2024 U.S.App.LEXIS 17740, at *9. EPA cannot ignore this duty because it is considering RIN generation for other potential fuels.

EPA does not allow ethanol and biodiesel to generate RINs for non-renewable inputs, and EPA does not dispute that the higher equivalence value gives renewable diesel a significant advantage. SABR Br. 26. "[D]issimilar treatment" is arbitrary action. *Grayscale Invs., LLC v. SEC*, 82 F.4th 1239, 1245 (D.C. Cir. 2023), *cited in* Refiner-Intervenors Br. 7-8. It was arbitrary and an abuse of discretion for EPA to continue to give renewable diesel an unfair advantage over biodiesel.

## CONCLUSION

The petition for review must be granted.

Respectfully submitted,

/s/ Sandra P. Franco
Sandra P. Franco
Franco Environmental Law, LLC
600 Pennsylvania Avenue, SE
Unit 15577
Washington, DC 20003
T 202 256-6115
sandra@francoenvironmentallaw.com

Jerome C. Muys, Jr.
Muys & Associates, LLC
910 17th Street, NW, Suite 800
Washington, DC 20006
T 301-785-0602
jmuys@muyslaw.com

*Counsel for Sustainable Advanced Biofuel
Refiners Coalition*

Dated:  August 20, 2024

## CERTIFICATION OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), the undersigned hereby certifies that the foregoing Initial Reply Brief of Petitioner:

1.      Complies with Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font; and

2.      Complies with the word limit of 5,500 words for "Renewable Energy Petitioners" under this Court's February 14, 2024 Order (Doc. #2040364) because it is 2,741 words based on Microsoft Word for Microsoft 365, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1).

Dated: August 20, 2024                     Respectfully submitted,


                                           /s/ Sandra P. Franco
                                           Sandra P. Franco

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2024, I caused to be electronically filed the foregoing Initial Reply Brief of Petitioner Sustainable Advanced Biofuel Refiners Coalition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the Court's CM/ECF system, which will serve counsel of record.

/s/ Sandra P. Franco
Sandra P. Franco